**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Astorria Sassano,<br>individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>- against -<br><br>Target Corporation,<br><br>Defendant, | 2:26 - cv - 2448<br><br>CLASS ACTION COMPLAINT<br><br>Jury Trial Demanded |

## CLASS ACTION COMPLAINT

Plaintiff, Astorria Sassano ("Plaintiff"), alleges upon information and belief, including investigation conducted by her attorneys, except for allegations pertaining to Plaintiff, which are based on her personal knowledge:

## NATURE OF THE ACTION

1. Plaintiff, Astorria Sassano, brings this consumer class action lawsuit individually, and on behalf of similarly situated consumers ("Class Members") who purchased for personal, family or household use a product known as the Market Pantry Original Coffee Creamer powder, 35.3 oz (the "Product").

2. Plaintiff, a New York and Florida resident, purchased the Product in New York in reasonable reliance on the materially misleading and deceptive trade practices and advertising of Target Corporation and its affiliates (collectively, "Target" or "Defendant"). In addition to unjustly enriching itself, Target acted in derogation of New York law.

Specifically, Target violated New York General Business Law §349 and §350, New York's consumer protection statutes, and breached various express warranties by manufacturing, labeling, marketing, promoting, and selling the Product.

3. Plaintiff purchased the Product in reasonable reliance on the Product's label representations and false label advertising stating that (1) one teaspoon of the Product is equivalent to 2 grams of the Product; (2) the Product has a "serving size" of one teaspoon; and (3) the 35.3 oz container of the Product contains "about 500 servings." Importantly, as explained in more detail *infra,* these misrepresentations and false advertising statements were made in the Nutrition Facts Panel (NFP) section of the Product's label. The meaning of the terms used within the NFP section of a food label have precisely defined meanings that must be adhered to by Target, because the NFP exists on food labels to permit consumers to compare competing food products, knowing that "serving size", "about 500 servings", "teaspoon" and "1 tsp. 2(g)" have the same meaning whether printed on the label of Coffee Mate powdered creamer, Great Value Coffee Creamer powder, Laird Superfood Creamer Original powder, or some other competing powdered coffee creamer. The NFP is designed to enable reasonable consumers like Plaintiff to make side by side comparisons of competing products. The process for determining the truthful and legally required label statement of the serving size and the related number of servings is explained by the Food and Drug Administration ("FDA") in its 2013 guidance *A Food Labeling Guide* under item L57.[1] Understanding the regulations that define the required content of the NFP and the legally prescribed meanings of the words used within the NFP will help the Court and jury understand

[1] FDA. 2013. Guidance for Industry: A Food Labeling Guide. https://www.fda.gov/media/81606/download (last accessed January 28, 2026).

the plausibility of how Plaintiff and the putative Class of New York consumers were deceived and misled in violation of New York statutory and common law.

4. **Step 1: Determine the Reference Amount Customarily Consumed (RACC) for the Product -** Federal regulations require that "all nutrient and food component quantities shall be declared in relation to a serving as defined in this section" (21 C.F.R. §101.9(b)). "Serving" or "serving size" is defined as "an amount of food customarily consumed per eating occasion by persons 4 years of age or older which is *expressed in a common household measure* that is appropriate to the food" (21 C.F.R. §101.9(b)(1), *emphasis* added). In addition, the metric unit mass of the common household serving size must be reported parenthetically after the common household measure (21 C.F.R. §101.9(b)(7)). When reporting the metric mass of the relevant common household measure the regulations also require Defendant to "round to the nearest whole number except for quantities that are less than 5g (mL). *The gram (mL) quantity between 2 and 5g (mL) should be rounded to the nearest 0.5g (mL)* and the g (mL) quantity less than 2g (mL) should be expressed in 0.1g (mL) increments" (21 C.F.R. §101.9(b)(7)(ii), *emphasis* added). Importantly, the requirement is to express the serving size in a common household measure and to then report the metric equivalent thereof, not the other way around. Defendant has identified the RACC for the Product as "cream or cream substitutes, powder" and the reference amount listed is "2 g" and the label statement listed is "_ tsp (_ g)." 21 C.F.R. §101.12(b), Table 2.

5. **Step 2: Determine the Serving Size of the Product -** "For nondiscrete bulk products (e.g., breakfast cereal, flour, sugar, dry mixes, concentrates, pancake mixes, macaroni and cheese kits) . . . the *serving size* shall be the amount in household measure that *most closely approximates the reference amount* for the product category" (21 C.F.R.

§101.9(b)(2)(iii), *emphasis* added). This regulatory requirement explicitly recognizes that the common household measure is not necessarily equivalent to the reference amount but rather the measure which most closely approximates it and that the label statement is derived therefrom.[2]

6. **Step 3: Determine the Number of Servings of the Product –** Finally, with the RACC identified (step 1) and the common household measure most closely approximating the RACC verified by mass testing of the product (step 2), the number of servings in each container of the product can be calculated; "determination of the number of servings per container shall be based on the *serving size* of the product" (21 C.F.R. §101.9(b)(8), *emphasis* added).

7. Also importantly, the phrase "about 500 servings" used in the NFP of the Product has a precise meaning and definition: "about 500 servings" means the container of the Product must contain between 499.5 and 500.49 servings of a volume of one teaspoon. 21 CFR § 101.9(b)(8)(i). One teaspoon (1 tsp.) likewise has a precisely defined volume of 5.0 milliliters. 21 CFR § 101.9(b)(5)(viii).

---

[2] The 2019 FDA guidance document *Food Labeling: Serving Sizes of Foods That Can Reasonably Be Consumed At One Eating Occasion, Reference Amounts Customarily Consumed, Serving Size- Related Issues, DualColumn Labeling, and Miscellaneous Topics* further clarifies in item B.5:

> "The RACC for my product is 50 g; however, a single serving of my product actually weighs 54 g because 54 g is the weight of the 1-cup household measure most closely approximating the RACC. How should the serving size be declared? Is the nutrition information based on the 50-g RACC, or the 1-cup serving size (weighing 54 g)?
>
> The *serving size* and the nutrition information on the label are based on the household unit *closest to the RACC* (i.e., 1 cup). *The RACC is used as the starting point to determine the serving size* for the foods in each product category (see 21 CFR 101.9(b)(2)), but *the actual amount of the product per serving (i.e., 54 g) is used* to calculate the nutrient amounts for the nutrition information in the Nutrition Facts label."

8. As explained in greater detail *infra,* two independent laboratories' testing of the Product found (1) the "servings" claim on the Product was false and misleading because the Product was short at least 13.31% of the promised one teaspoon servings; and (2) the stated equivalency that one teaspoon of the Product was the same as two grams of the Product was false.

9. Based on relevant Federal regulations, Target erroneously stated the metric mass equivalent of the stated one teaspoon serving size, and, as a result, the Product did not contain the promised number of servings stated on the Product's label and advertising. The mass equivalent is the "(2g)" notation following the "1 tsp" serving size in the NFP.

10. Defendant unlawfully manufactured, marketed, advertised, sold, and distributed the Product injuring Plaintiff and the other putative class members by understating the mass equivalent of the one teaspoon serving size and thus delivering far fewer servings than the represented 499.50 to 500.49 servings of the Product.

11. The allegations made in this Class Action are almost identical to the allegations made by the plaintiffs in *Yonan v. Target, Inc.*, 591 F. Supp. 3d 1291 (S.D. Fla. 2022), which was originally filed in Florida federal court and then settled in a different forum. In *Yonan*, labeling and advertising of a Coffee Mate powdered creamer claimed the product contained 499.50 to 500.49 1-teaspoon servings. However, third-party testing found that the Coffee Mate product in fact contained 383.3 servings (because the metric mass equivalent of one teaspoon was actually 2.3 grams rather than then 2 grams represented in the Coffee Mate NFP), constituting a shortage of 23.2% of the promised servings. *Yonan* was ultimately settled as part of a nationwide class action; however, prior to settlement, Nestle revised the label of the product to correct the error. Plaintiff's counsel in this action also represented plaintiffs in

the *Yonan* action.

12. The allegations in this complaint are also almost identical to those in *Gwinn v. Laird Superfood, Inc.,* 643 F. Supp. 3d 450 (S.D.N.Y. 2022). "Gwinn alleges that a teaspoon of each Product in fact weighs more than 2 grams, and that the nutrition labels therefore exaggerate the number of teaspoon-or 3/4-teaspoon-sized servings in each container." Id. at 453. The product at issue in *Gwinn* was powdered coffee creamer.

**PARTIES**

13. Plaintiff, Astorria Sassano, is an individual consumer over the age of eighteen (18) who is a part-time resident of Hampton Bays, Suffolk County, New York. Plaintiff seeks damages on behalf of herself and the Class, and respectfully requests a jury trial as to damages.

14. Defendant, Target Corporation, is a Minnesota corporation with a principal place of business in Minneapolis, Minnesota.

15. Target is authorized to do business in the State of New York as a foreign corporation.

16. Target is a general merchandise retailer with net sales of $107 billion in fiscal year 2024[3]. Target has approximately 2,000 retail stores nationwide, including 107 in New York[4] and also has an eCommerce website at Target.com.

17. Target sells brand name merchandise as well as markets lines of merchandise under its private brands, including "Market Pantry,"[5] which is the brand of the Product at issue in this Class Action Complaint.

---

[3] https://corporate.target.com/about.
[4] https://corporate.target.com/getmedia/c23bca62-1790-47bd-ad0e-6971aee4f78d/2024-Annual-Report-Target-Corporation.pdf at 21.
[5] Id.

18. Target manufactures, markets, promotes, advertises, and sells Market Pantry coffee creamers, including the Product at issue in this litigation.

19. Plaintiff alleges that, at all times relevant herein, Target and its subsidiaries, affiliates, and other related entities and suppliers, as well as their respective employees, were the agents, servants, or employees of Target and at all times relevant herein, each was acting within the purpose and scope of that agency or employment.

20. In addition, Plaintiff alleges that, in committing the wrongful acts alleged herein, Target, in concert with its subsidiaries, affiliates, and/or other related entities and suppliers, and their respective employees, planned, participated in, and furthered a common scheme to induce members of the public to purchase the Product by means of untrue, misleading, deceptive, and/or fraudulent representations and advertising.

21. Whenever reference in this Class Action Complaint is made to any act by Target or its subsidiaries, affiliates, distributors, retailers and other related entities and suppliers, such allegation shall be deemed to mean that the principals, officers, directors, employees, agents, and/or representatives of Target committed, knew of, performed, authorized, ratified and/or directed that act or transaction on behalf of Target while actively engaged in the scope of their duties.

## JURISDICTION & VENUE

22. This Court has jurisdiction over the subject matter presented by this Complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), which explicitly provides for the original jurisdiction of the Federal Courts of any class action in which any member of the plaintiff class is a citizen of a state different from any defendant, and in which the matter in controversy exceeds in the aggregate the

sum of $5,000,000.00, exclusive of interest and costs. Pursuant to 28 U.S.C. § 1332(d)(2)(A), Plaintiff alleges that the total claims of the members of the Plaintiff's Class in this action are in excess of $5,000,000.00, in the aggregate, including any statutory damages, and exclusive of interest and costs, and as set forth below, diversity of citizenship exists under CAFA because, as more fully set forth below, Plaintiff is a citizen of both New York and Florida, and Defendant is incorporated in Minnesota with a principal place of business in Minnesota. Thus, the parties are citizens of different states. Based on information and belief regarding nationwide sales of the coffee creamer product at issue in this lawsuit over the most recent three-year period, Plaintiff has a good faith basis to plead that the total claims of the Plaintiff's Class (New York residents), including statutory damages, exceed $5,000,000.00.

23. Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2) because of a substantial part of the events or omissions giving rise to the claim occurred in this District. Specifically, Plaintiff purchased the Product in Commack, Suffolk County, New York and Defendant has intentionally availed itself of the laws and markets within this District.

**FACTUAL ALLEGATIONS**

24. Plaintiff, Astorria Sassano, has purchased the Market Pantry Original Coffee Creamer (35.3 oz) Product on several occasions, including on October 20, 2023 from the Target store located at 98 Veterans Memorial Highway, Commack, New York 11725-3432. A copy of the receipt is attached hereto and incorporated herein as **Exhibit "A."**

25. When Plaintiff purchased the Product on October 20, 2023, Plaintiff read the Nutrition Facts Panel portion of the label and its information about serving size and number of servings. Plaintiff, like any reasonable consumer, relied on the information inside the Nutrition Facts Panel in making product comparisons and informing her decision to purchase the Product.

26. After her October 20, 2023 purchase, Plaintiff retained Counsel. Plaintiff's Product was then sent for testing to the same independent laboratory who provided a report of its test results on January 22, 2024 ("Plaintiff's Product Testing"). Plaintiff's Product Testing found that the Product falsely represented and advertised (1) the number of one teaspoon servings as 500 when in reality there were materially fewer than 500 one teaspoon servings; and (2) that one teaspoon of the Product had a mass of two grams when in reality the mass was greater than 2 grams and should have been reported on the label as 2.5 grams. The Plaintiff's Product Testing showed that Plaintiff's Product was missing approximately 83 servings, or 16.6% of the number of servings represented on the Product's label.

27. A second independent laboratory performed a rigorous FDA compliant test of 12 packages of the Product using FDA sampling protocols and strict adherence to FDA testing protocols, and similarly found, as described in the Research Report dated June 9, 2025, that the Product falsely misrepresented that (1) the number of one teaspoon servings as 500 when in reality there were 433 one teaspoon servings; and (2) one teaspoon of the Product had a mass of two grams when in reality the mass was 2.30 (the "Composite Product Testing"). Per the Composite Product Testing, the Product was missing approximately 66.6 servings, or 13.31% of the number of servings represented on the Product's label.

28. As determined by these tests, Plaintiff received at least 13.31% fewer one teaspoon servings than represented and advertised on the Product label. Receiving fewer than the 500 one teaspoon servings represented and advertised on the Product label caused Plaintiff financial injury in the amount of, at least, the purchase price multiplied by at least 13.31%.

29. The Product that is the subject of this litigation is comprised of powdered coffee creamer provided to consumers for the purpose of mixing with coffee.

30. The Product's nutrition facts panel on the back of the Product claims that the Product provides "**about 500 servings per container**" and that the serving size for the Product is "1 tsp. (2g)." Under FDA regulations "about" means the container contains between 499.50 and 500.49 servings.[6]

31. The front label of the Product states that the net weight of the Product is "1kg", which is equivalent to 1,000 grams.

32. Photographs of the Product's labeling and nutrition panels are attached hereto and incorporated herein as **Exhibit "B."**

33. The advertising and labeling for the Product, including the Product purchased by Plaintiff, were prepared and/or approved by Target and its agents.

34. Based on this labeling and advertising, including the 2g metric mass equivalent of the serving size listed on the Product's nutritional facts panel located on the back of the Product, a reasonable consumer purchasing this Product would reasonably believe that the Product contains 500 one teaspoon servings of powdered coffee creamer.

35. However, the labeling of the Product does not comply with relevant FDA regulations and the contents of the Product cannot yield the 500 servings promised.

36. As the independent testing, discussed in more detail *infra,* shows, the gram weight of the one teaspoon serving size is understated, meaning that the Product yields at least 13.31% fewer servings. One teaspoon of the Product does not have a mass of 2 grams and the number of one teaspoon servings per container is overstated by at least 13.31%.

37. Expert Testing: Testing of the Product purchased by Plaintiff on October 20, 2023, by an independent laboratory and additional testing by a second laboratory, which second

[6] 21 C.F.R. § 101.9(b)(8).

laboratory performed a rigorous FDA compliant test of the Product using FDA sampling protocols and strict adherence to FDA testing protocols, confirmed the misleading and false statements detailed in the preceding paragraph. That expert testing is attached hereto and incorporated herein as **Exhibits "C-1" and "C-2"** to this Class Action Complaint. The Plaintiff's Product Testing, attached hereto as Exhibit C-1, establishes that the metric mass equivalent of a one teaspoon serving of the Product is actually 2.4 grams not the 2 grams claimed on the NFP of the Product's label. The Composite Product Testing, attached hereto as Exhibit C-2, establishes that the metric mass equivalent of a one teaspoon serving of the Product is actually 2.30 grams not the 2 grams claimed on the NFP of the Product label.

38. As required under the Federal regulations, the metric unit equivalent of the one teaspoon serving of the Product[7] rounded to the nearest 0.5mg (mL)[8] should be parenthetically disclosed after the common household measure of one teaspoon. Based on the Plaintiff's Product Testing in Exhibit C-1, the mass equivalent of a one teaspoon serving of the Product should have been reported as "(2.5g)". And, based on the Compositive Product Testing in Exhibit C-2, the mass equivalent of a one teaspoon serving of the Product should have been reported as "(2.5g)".

39. Accordingly, the Product's nutrition facts panel should have stated "2.5g" rather than "2g" for the metric mass equivalent of the one teaspoon serving of the Product.

40. Target failed to meet this FDA labeling requirement by erroneously stating the metric mass equivalent of the one teaspoon serving and this failure rendered the Product's labeling deceptive, misleading, and false. The proper number of servings to report on the NFP is determined by dividing the net mass in grams of the Product by 2.5 grams. In the case of the Product, dividing 1000 grams by 2.5g per one teaspoon serving would yield 400 servings. Based

[7] 21 C.F.R. §§ 101.9(b)(7)
[8] 21 C.F.R. §§ 101.9(b)(7)(ii)

on laboratory testing and FDA labeling requirements including the rounding requirements, Defendant was claiming to deliver 20% more servings than allowed by law.

41. Target incorrectly calculated the number of servings provided by the Product given that the "determination of the number of servings per container shall be based on the serving size of the product"[9] and that a "serving" is "expressed in a common household measure".[10] Defendant calculated the number of servings in the Product as follows: one teaspoon serving size; 1,000g net mass ÷ 2g per serving = 500 servings. But the actual mass of one teaspoon of the Product as a matter of law is 2.5g (not 2.0g); thus, a legally labeled container of the Product would have reported 400 servings (i.e., 1,000g net mass ÷ 2.5g per serving = 400 servings). A legally labeled container of the Product would report 2.5g as the mass equivalent of a one teaspoon serving size. Because the Product is deceptively and falsely labeled, the Product is misbranded. N.Y. Agric. & Mkts. Law § 201 (2024). Misbranded products cannot be legally sold in New York. N.Y. Agric. & Mkts. Law § 199-a (2024).

42. The advertising and labeling for the Product, including the Product purchased by Plaintiff in October of 2023, were prepared and/or approved by Target and its agents, and were disseminated and marketed by Target and its agents through advertising and labeling containing the misrepresentations alleged herein.

43. The advertising for the Product was designed to encourage consumers to purchase the Product and reasonably misled reasonable consumers, including Plaintiff and the Class Members, into purchasing the Product.

44. Target markets and distributes the Product and is the company that created and/or authorized the unlawful, fraudulent, misleading and/or deceptive advertising, labeling, packaging

---

[9] 21 C.F.R. §§ 101.9(b)(8)
[10] 21 C.F.R. §§ 101.9(b)(1)

and statements about the Product.

45. Because Plaintiff purchased the Product as a product advertising itself as containing about 500 servings, which as a matter of law, in this circumstance, means 499.50 to 500.49 servings, of powdered coffee creamer, and it was not such a product, Plaintiff suffered financial injury in proportion to the servings of powdered coffee creamer not received.

46. Under the view most favorable to Defendant of the testing attached and incorporated herein as Exhibits "C-1" and "C-2", Plaintiff and other consumers of the Product, were cheated out of at least 13.31% of the servings they paid for based on the advertising, marketing, packaging and labeling of the Product. Their financial injury is thus quantifiable as at least 13.31% multiplied by the purchase price of the Product.

47. The Product's representations, as outlined and explained above, which are uniformly, consistently and prominently displayed on each individual package of the Product are untrue, misleading, deceptive and false.. In making this allegation that the representations on the packaging regarding the number of servings contained in the package are untrue, Plaintiff relies upon independent laboratory testing, attached as **Exhibit "C-1"** and **Exhibit "C-2"**, showing that the Product contains at least 13.31% fewer servings than the 500 servings represented and advertised.

48. Additionally, Plaintiff alleges that Target has had actual knowledge of the misleading, deceptive and false advertising and labeling of its Product since before Plaintiff made her October 20, 2023 purchase and to her knowledge has not taken any corrective actions.

49. On information and reasonable belief, Plaintiff purchased the Product on at least one occasion following the date on which Target had actual knowledge of the deceptively labeled

and advertised Product.[11] Plaintiff was unaware the Product labeling and advertising was deceptive, false and materially misleading at the time Plaintiff made her October 20, 2023 purchase.

50. Upon information and reasonable belief, despite Target's knowledge of the falseness and deceptiveness of the Product's labeling and advertising, Target has continued to manufacture, market, and distribute the Product, using the unlawful, fraudulent, misleading and/or deceptive advertising and statements about the Product.

51. Plaintiff is aggrieved and suffered economic injury by the deceptively labeled and marketed Product as she relied on the misleading and deceptive labeling and advertising and was deprived of the benefit of the bargain she reasonably anticipated from the Product's labeling and advertising; specifically, she was deprived of the benefit she paid for, a product labeled and advertised as containing 499.50 to 500.49 servings of powdered coffee creamer, when in actuality based on expert testing the Product contains at least 13.31% fewer servings.

52. Reasonable consumers, such as the Plaintiff, will continue to be aggrieved and suffer economic injury by the deceptive and misleading labeling and advertising of the Product, as reasonable consumers will continue to plausibly rely on the Product labeling and advertising and be misled and deceived into believing that they are purchasing a Product containing at least 13.31% more servings of powdered coffee creamer than they are actually receiving.

53. Upon information and reasonable belief, Target could manufacture, market, label, distribute and sell the Product without deceptive labeling by complying with FDA regulations concerning the content of the NFP.

---

[11] On information and belief, in August of 2023, Target received a notice through its registered agent on behalf of a person who purchased the Product in a state other than New York.

54. Target touts that it stands for "More for your money" as "Expect More. Pay Less" is its brand promise.[12] Target failed to meet its own delineated brand promise in committing the wrongful acts alleged herein.

55. Target's money back guarantee is conditional and by operation excluded Plaintiff. Target refunds up to 365 days after purchase and requires a receipt. Plaintiff's purchase on October 20, 2023 is more than 365 days old and Plaintiff also purchased the Product at least one time prior to June 2022, which purchase was more than 365 days old by the time Plaintiff first discovered the misleading, false and deceptive nature of the Product label from Counsel based on Plaintiff's Product Testing in January of 2024. The below quoted language from Target's actual "money-back guarantee" terms show that it does not apply to Plaintiff's circumstances.

^ What's the return policy for Target Owned Brand items?

- Target Owned Brand items can be returned for up to one year with a receipt for an exchange or refund.
    - The 30-day extended return window for Target Circle Card holders is not extended to Target Owned Brand items.
    - The guest can use their Target Wallet as a form of receipt if the transaction is in the purchase history.
- Target Owned Brand items are "private" label items developed exclusively for Target.
    - Limited Time Offer (LTO) Designer launches are NOT included in the owned brand return policy and typically have a shortened return policy of two weeks.

https://www.target.com/help/articles/returns-exchanges/returns.

## PLAINTIFF'S ADDITIONAL ALLEGATIONS

56. Plaintiff, Astorria Sassano, has purchased the Market Pantry Original Coffee Creamer (35.3 oz) Product on several occasions, including on October 20, 2023 from the Target store located at 98 Veterans Memorial Highway, Commack, New York 11725-3432. A copy of the receipt is attached hereto as Exhibit "A," documenting the purchase and privity between Plaintiff and Target.

57. When Plaintiff purchased the Product on October 20, 2023, Plaintiff read the Nutrition Facts Panel portion of the label and its information about serving size and number of

[12] https://corporate.target.com/about/purpose-history/our-commitments

servings. Plaintiff, like any reasonable consumer, relied on the information inside the Nutrition Facts Panel in making product comparisons and informing her decision to purchase the Product. The number of servings and serving size representations are material, objective affirmations or statements of fact about the Product that is part of the basis of the bargain. Statements about the number of servings and size of those servings supplied by the Product naturally and logically induced the Plaintiff to purchase the Product. As alleged, Plaintiff in fact relied upon the serving size and the number of serving representations on the Product. Target breached its promise about the serving size and number of servings, causing Plaintiff to suffer an economic injury and receive less than the basis of the bargain. This conduct is a breach of the express warranty between Plaintiff and Target. As alleged more particularly in Paragraph 70, Plaintiff provided Target with prompt detailed notice of this breach and Target has not cured the breach.

58. In addition, to induce Plaintiff and all members of the putative class to purchase the Product from Target in store, Target offers a 365-day money-back return guarantee. As alleged more specifically in Paragraph 70, written notice was provided to Target on February 15, 2025, yet Target has not provided or tendered the refund or given any reason for not providing the refund in conformance with the refund guarantee. Target's 365-day refund guarantee as to the Product constitutes an additional, independent, material, objective affirmation or statement of fact about the Product that is part of the basis of the bargain. This additional refund guarantee by Target naturally and logically was an independent inducement to Plaintiff to purchase the Product from a Target brick and mortar store. Plaintiff in fact relied upon this additional moneyback guarantee in deciding whether to purchase the Product. Target breached its promise about providing the money-back guarantee, causing Plaintiff to suffer economic injury and receive less than the basis of the bargain. This conduct is a breach of express warranty between Plaintiff and

Target with respect to the money-back guarantee.

59. Plaintiff is aggrieved by the deceptively labeled and marketed Product as she relied on the materially misleading and deceptive labeling and advertising and was deprived of the benefit of the bargain she reasonably anticipated from her reading of and reliance on the Product's NFP labeling and advertising. Specifically, Plaintiff was deprived of the benefit she paid for, a product labeled and advertised as containing 499.50 to 500.49 servings of powdered coffee creamer, when in actuality based on expert testing, the Product contains at least 13.31% fewer servings.

60. Because Plaintiff purchased the Product advertised as capable of providing about 500 servings of powdered coffee creamer and it was not such product, Plaintiff was damaged in proportion to the servings of powdered coffee creamer not received.

61. The Product's representations, as outlined and explained above, which are uniformly, consistently, and prominently displayed on each individual package of the Product are untrue, misleading, and deceive the public.

62. Reasonable consumers, such as Plaintiff, will continue to be aggrieved by the deceptive and misleading labeling and advertising of the Product, as reasonable consumers will continue to reasonably believe that they are purchasing Product containing 499.50 to 500.49 servings of powdered coffee creamer. A consumer has no ability to determine if the representations on the label are true without buying the Product and apportioning them in accordance with the Product's label instructions or having it tested by a laboratory. Reasonable consumers are entitled to rely on the truth of label statements about the number of servings a product provides.

63. Upon information and reasonable belief, Defendant could sell the Product without deceptive labeling by, for example, correctly stating the metric mass equivalent of the one teaspoon serving and adjusting the number of one teaspoon servings yielded by the Product according to the actual metric mass of each one teaspoon serving.

64. Target unlawfully marketed, advertised, sold, and distributed the Product.

65. Target unlawfully and deceptively marketed, advertised, sold, and distributed the Product. Because the Product is deceptively and falsely labeled it is misbranded. N.Y. Agric. & Mkts. Law § 201 (2024). Misbranded products cannot be legally sold in New York. N.Y. Agric. & Mkts. Law § 199-a (2024).

66. The Product was a deceptively marketed and labeled product under New York law because the Product's labeling and advertising made false, deceptive, and materially misleading representations. Defendant's liability stems not from a violation of FDA regulations but from violations of §§ 349 and 350 of the GBL and from breaches of express warranties.

67. Defendant unlawfully and deceptively manufactured, marketed, labeled, advertised, sold, and distributed the Product to New York purchasers, because the Product contained false and deceptive labeling which materially misled consumers.

68. Additionally, upon information and reasonable belief, Target had actual knowledge of the false, deceptive and misleading label since approximately August 11, 2023, and continues to market, advertise, sell and distribute the Product with its false, deceptive and misleading label.

69. Target sold the Product at a premium price per actual serving provided, and Target's false and misleading representations on the Product deceive New York consumers for the reasons previously alleged above.

70. On February 15, 2024, Plaintiff delivered detailed written notice to Defendant, a copy of which is attached hereto and incorporated herein as **Exhibit "D."**

71. Had Target not approved, authorized, and participated in the advertising, marketing, labeling, and sale of the Product containing the above-referenced deceptive representations, Plaintiff and the other Class members would not have been economically injured because Plaintiff and the other Class members would not have purchased the Product or would have paid less for the Product.

72. In addition, Plaintiff could not have determined whether the number of servings claimed on the Product's label was accurate other than to purchase the Product and apportion it in accordance with the stated serving size or to have it tested by a laboratory.

73. Plaintiff spent time, and incurred significant expense, having the Product tested by third-party experts.

74. As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations, Defendant injured Plaintiff and the other Class Members in that Plaintiff and other Class Members:

a. paid a sum of money for the Product that was not as represented;

b. paid a premium price per serving of the Product as the number of servings were not provided as represented;

c. were deprived of the benefit of the bargain because the Product they purchased were different than what Defendant warranted;

d. were deprived of the benefit of the bargain because the Product they purchased had less value than what was represented by Defendant;

e. did not receive Product that measured up to their expectations as created by

Defendant;

f. purchased Product that was other than what was represented by Defendant;

g. received Product that Plaintiff and the other members of the Class did not expect or consent to;

h. received Product that had different characteristics than what Defendant promised; and

i. received a Product that delivered at least 13.31% fewer one teaspoon servings than represented on the label, thus causing Plaintiff and each member of the Class to suffer a quantifiable economic injury in an amount equal to at least 13.31% of the purchase price.

75. Accordingly, Plaintiff and the other Class Members have suffered injury in fact and lost money or property as a result of Defendant's wrongful conduct.

76. Plaintiff and the other Class Members did not obtain the full value of the advertised Product due to Defendant's misrepresentations.

77. Plaintiff and the other Class Members purchased, purchased more of, or paid more for the Product than they would have done had they known the truth about the Product.

78. The Product is worth significantly less than what Plaintiff and members of the Class paid for, and/or is not what Plaintiff and members of the Class reasonably intended to receive.

79. The Product was deceptively advertised and marketed for the reasons previously alleged herein.

80. With respect to the Product, Plaintiff and members of the Class paid a price premium or received less than they bargained for, because Plaintiff and members of the Class

reasonably believed the Product contained the number of servings of powdered coffee creamer specified on the label and in the advertising, when in fact the Product did not contain anywhere near the promised number of servings. In the context of this pleading, price premium means paying for a Product containing e.g. 500 one teaspoon servings but receiving a Product containing e.g. 433 one teaspoon servings; thus, Plaintiff paid a premium price for the Product received, which was the Product with only 433 one teaspoon servings.

81. Likewise, if Plaintiff and members of the Class had known that the Product did not contain the number of servings of powdered coffee creamer specified on the label and in the advertising, they would not have purchased the Product or would have paid less for the Product.

82. Plaintiff and the other Class Members would likely purchase the Product again if the deceptive advertising and labeling on the Product were corrected, because there would be a fair, accurate and truthful basis to compare competing products at the time of purchase. New York consumer protection laws like GBL §349 and GBL §350, focus on the time at which the purchasing decision is made not on how the Product may be used later in time.

83. If Defendant is allowed to continue to violate New York law by continuing to advertise, market, and sell the misbranded and deceptively, misleadingly, and falsely labeled Product, Plaintiff and the other Class Members could purchase the Product again, mistakenly believing the Product had been changed in some way such that the labeling and advertising were at that time true.

84. Plaintiff has no way of knowing if, or when, Target makes changes to the Product and whether the Product's labeling and advertising remains false and deceptive. For example, Target could change the moisture content or particle size of the Product powder (thus changing its density), and Plaintiff would have no way of knowing if the Product's representations about

the number of servings it contains remain deceptive other than to purchase the Product and evaluate how many servings are contained within.

85. Accordingly, Plaintiff and all other consumers purchasing the Product have been, are, and will continue to suffer a loss and be damaged by the deceptively, dishonestly, misleadingly, and falsely marketed, advertised, and labeled Product and are being deprived of the benefit of the bargain they reasonably anticipated from the Product's labeling, marketing, and advertising. Plaintiff and the members of the putative class are also being harmed by continuing exposure to the misbranded Product being offered for sale in New York.

86. Plaintiff has performed all conditions precedent to bringing this Action.

87. When considering the plausibility of the allegations made in this Complaint, Plaintiff and the Class further direct the Court to the Report of John Iannitto, attached hereto as **Exhibit "E"** and incorporated herein for all purposes. As demonstrated, Mr. Iannitto has 40 years' experience in the marketing and advertising of consumer products. It is his opinion that a reasonable consumer would read and use the NFP and use the NFP to make comparisons between products including comparisons between the number of servings and the cost per serving. He also expresses his opinion that the type of false statements at issue in this lawsuit are misleading, deceptive, and material to a reasonable consumer.

88. Additionally, recent studies have found that 79% of adults reported using Nutrition Facts labels sometimes, most of the time, or always (i.e., they regularly used it) when buying packaged food products.[13] Specifically, more than 62% of adults regularly use serving size information on food labels and more than 64% regularly use number of servings on food

[13] Restrepo, B. J., *Who Regularly Uses the Nutrition Facts Label? Exploring Demographic, Socioeconomic, and Geographic Differences* (Report No. ERR-345), U.S. Department of Agriculture, Economic Research Service, at iii.

labels.[14] Clearly, reasonable consumers review NFPs and expect the information provided in it to be accurate as NFPs exist on food labels to enable reasonable consumers like Plaintiff and the Class to make side by side comparisons of competing products.

89. The plausibility of the allegations in this Class Action are further supported by the fact that these same issues on virtually identical facts with other brands of powdered coffee creamers have been tested by and substantially survived motions to dismiss in two federal courts. These cases were referenced earlier in this pleading and their citations are: *Gwinn v. Laird Superfood, Inc.*, 643 F. Supp. 3d 450 (S.D.N.Y. 2022); and *Yonan v. Target, Inc.*, 591 F. Supp. 3d 1291 (S.D. Fla. 2022). A nearly identical case filed in the Eastern District of New York by counsel in this Class Action also substantially survived the motion to dismiss. *See Knight v. Walmart Inc.,* 24-cv-06623-GRB-SIL.

## CLASS ALLEGATIONS

90. Plaintiff brings this class action pursuant to all applicable provisions of Section 23 of the Federal Rules of Civil Procedure, on behalf of themselves and all members of the following Class:

> New York Class: During the period beginning at the earliest date allowed by law and ending on April 23, 2025, all persons who purchased the Product within the State of New York from a Target brick and mortar store for personal, family or household use and not resale.

91. Members of the Class described above are referred to herein as "Class Members" or members of the "Class."

92. Plaintiff reserves the right to amend the Class definition or add a Class or Classes if discovery and/or further investigation reveal that the Class definition(s) should be narrowed,

[14] Id. at 7.

expanded or otherwise modified.

93. Excluded from the Class are Defendant, its subsidiaries, affiliates, and employees; all persons who make a timely election to be excluded from the Class; governmental entities; and the Judge(s) to whom this case is assigned and any immediate family members thereof.

94. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of Plaintiff's claims on a class-wide basis using the same evidence as would be used to prove those claims in individual actions alleging the same claims.

**A. Numerosity – Federal Rules of Civil Procedure 23(a)(1)**

95. The members of the Class are so numerous that individual joinder of all class members is impracticable.

96. The precise number of members of the Class is unknown to Plaintiff, but it is clear that the number greatly exceeds the number that would make joinder practicable. Upon information and belief Plaintiff estimates the number of members in the Class to be in the tens-of-thousands or more, particularly given Defendant's comprehensive distribution and sales network throughout New York.

97. Members of the Class may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

98. The number of individuals who comprise the Class is so numerous that the disposition of all such person's claims in a class action, rather than in individual actions, will benefit both the parties and the courts.

**B. Commonality and Predominance – Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3)**

99. Common questions of law or fact exist as to all members of each Class and predominate over any questions affecting only individual members of the Class. All members of the Class were exposed to Defendant's deceptive and misleading advertising and marketing claims alleged herein.

100. Furthermore, common questions of law or fact include:

a. whether Defendant engaged in the conduct as alleged herein;

b. whether Defendant's practices violate applicable law cited herein; and

c. whether Plaintiff and the other members of the Class are entitled to actual, statutory, or other forms of damages, and/or other monetary relief.

101. Defendant engaged in a common course of conduct in contravention of the laws Plaintiff seeks to enforce individually, and on behalf of the other members of the proposed Class. Materially identical business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action. Moreover, the common questions will yield common answers.

**C. Typicality – Federal Rules of Civil Procedure 23(a)(3)**

102. Plaintiff's claims are typical of the claims of the other members of the Class because, among other things, all members of the Class purchased, in a typical consumer setting, Defendant's Product, and were comparably injured through Defendant's same uniform misconduct described herein. Further, there are no defenses available to Defendant that are unique to Plaintiff or to any particular members of the Class.

**D. Adequacy of Representation – Federal Rules of Civil Procedure 23(a)(4)**

103. Plaintiff is an adequate representative of the members of the Class because Plaintiff's interests do not conflict with the interests of the other members of the Class that Plaintiff seeks to represent. Plaintiff has retained counsel competent and experienced in complex class action litigation and Plaintiff will prosecute this action vigorously. The Class's interests will be fairly and adequately protected by Plaintiff and Plaintiff's counsel. Plaintiff's counsel has represented consumers in a wide variety of actions where they have sought to protect consumers from fraudulent and deceptive practices.

**E. Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2)**

104. Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Class, thereby making appropriate final injunctive relief and/or corresponding declaratory relief, as described herein, with respect to the members of the Class as a whole.

**F. Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1)**

105. Absent a representative class action, members of the Class would continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated purchasers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant. The proposed Class thus satisfies the requirements of Fed. R. Civ. P. 23(b)(1).

**G. Superiority - Federal Rule of Civil Procedure 23(b)(3)**

106. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other members of the Class are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for members of the Class to individually seek redress for Defendant's wrongful conduct. Even if the members of the Class could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments; and increases the delay and expense to all parties and the court system and thereby unnecessarily clogging of dockets.

107. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Given the similar nature of the members of the Class's claims and the absence of material or dispositive differences in laws upon which the claims are based, the Class will be easily managed by the Court and the parties.

**FIRST CAUSE OF ACTION:**
**VIOLATION OF NEW YORK GEN.BUS.LAW § 349, *et seq.***

108. Plaintiff repeats, re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Class Action Complaint as if fully set forth herein verbatim.

109. The New York General Business Law Section 349 ("GBL §349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

110. To state a claim under GBL §§ 349 and 350, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct, that is (2) materially misleading, and that (3) the plaintiff suffered injury as a result of the allegedly deceptive act or practice.[15]

111. Target is a general merchandise retailer with net sales of $107 billion in fiscal year 2024.[16] Target has approximately 2,000 retail stores nationwide, including 107 in New York[17] and also has an eCommerce website at Target.com.

112. Target sells brand name merchandise as well as markets lines of merchandise under its private brands, including "Market Pantry," [18] which is the brand of the Product at issue in this Class Action Complaint.

113. Target manufactures, markets, promotes, advertises, and sells Market Pantry coffee creamers, including the Product at issue in this litigation.

114. Defendant's deceptive acts and practices were directed at, and impacted, consumers located in New York.

115. Defendant misleadingly, inaccurately, deceptively, and falsely advertises and markets its Product to Plaintiff and consumers. Defendant's deceptive practices are likely to mislead—and have misled—reasonable consumers acting reasonably, such as Plaintiff and members of the Class.

116. Specifically, Defendant marketed, labeled and advertised the Product in a deceptive, false, and materially misleading manner since the representations contained on the Product stated that the Product contains "about 500 servings" of powdered coffee creamer and

---

[15] *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2012); *see Goshen v. Mutual Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 n.1 (2002).
[16] https://corporate.target.com/about.
[17] https://corporate.target.com/getmedia/c23bca62-1790-47bd-ad0e-6971aee4f78d/2024-Annual-Report-Target-Corporation.pdf at 21.
[18] Id.

that the serving size is "1 tsp (2g)" (and the representations on target.com stated that the Product contains "about 500 servings"). *See* Exhibit "B". Based on this prominent labeling and advertising, a reasonable consumer purchasing this Product would reasonably believe that the Product contained 500 servings. Despite this prominent labeling and advertising, the Product does not contain the number of servings promised because Defendant incorrectly stated the metric mass equivalent of the one teaspoon serving size and used such erroneous metric mass equivalent to determine the number of servings provided by the Product.

117. Reasonable consumers rely on Defendant to honestly market and label the Product in a way that does not deceive reasonable consumers into believing they are purchasing a Product that has 500 servings, when the truth is that the Product contains at least 13.31% fewer servings than the number of servings promised on the Product's label.

118. In addition, reasonable consumers would expect Defendant to honestly market and label the Product given that Target touts that it stands for "More for your money" as "It's our Expect More. Pay Less. brand promise." [19]

119. Defendant's improper consumer-oriented conduct—marketing, labeling, and advertising the Product as providing about 500 servings per container—is misleading in a material way in that it, *inter alia*, induced Plaintiff and the Class Members to purchase and pay a premium for Defendant's Product when they otherwise would not have or would have paid less for, because the Product contained at least 13.31% fewer servings than promised. Target has deceived reasonable consumers like Plaintiff and the Class into believing that (a) the Product provided a number of one teaspoon servings that it did not; and (b) a one teaspoon serving of the Product has a mass of 2g when it did not.

---

[19] https://corporate.target.com/about/purpose-history/our-commitments.

120. Plaintiff and the Class Members have been injured inasmuch as they paid a price for a Product based on 500 servings, in circumstances in which the Product provided at least 13.31% fewer servings per container. Accordingly, Plaintiff and the Class Members received less than what they bargained and/or paid for, which caused them to suffer economic injury equal to at least 13.31% of the purchase price of the Product.

121. Since Plaintiff purchased the Product as a product advertising itself as containing 499.50 to 500.49 servings of powdered coffee creamer, and it was not such a product, Plaintiff was damaged in proportion to the servings of powdered coffee creamer not received. Plaintiff was deprived of at least 67 servings.

122. Specifically, Plaintiff and other consumers of the Product, were cheated out of at least 13.31% of the servings they paid for based on the advertising, marketing, packaging and labeling of the Product.

123. Defendant's advertising and the Product's packaging and labeling induced Plaintiff and the Class Members to buy Defendant's Product and to pay a premium price. Plaintiff relied on the NFP information in making her purchasing decision to buy the Product.

124. Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the Class Members have been damaged thereby.

125. GBL §349 gives the right to any person who has been injured by reason of any violation of GBL §349 to bring an action in his or her own name to enjoin such unlawful act or practice, an action to recover his or her actual damages or fifty dollars ($50.00), whichever is greater, or both such actions.

126. Additionally pursuant to GBL §349, the Court has discretion to increase the award of damages to an amount not to exceed three times the actual damages up to $1,000 if the Court finds the defendant willfully or knowingly violated GBL §349 and the discretion to award reasonable attorney's fees to a prevailing plaintiff.

127. On information and reasonable belief, Defendant had prior notice that the Product and advertising contained these untrue, false, and misleading statements regarding the number of servings provided by the Product. Defendant knew, or should have known, about the misbranded, false, misleading and deceptive nature of the Product's marketing and label advertising.

128. Despite being notified of the material misrepresentations described in this Class Action Complaint, Defendant made, and continues to make, these untrue, false, materially misleading, and illegal statements regarding the number of servings provided by the Product.

129. As a result of Defendant's recurring, unlawful deceptive acts and practices, Plaintiff and the Class Members are entitled to monetary, statutory, compensatory, and treble damages, restitution, and disgorgement of all money obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs. The damages suffered by the Plaintiff and the Class were directly and proximately caused by the deceptive and materially misleading practices of Defendant.

130. In addition, Plaintiff and Class Members seek reasonable attorneys' fees and costs.

131. Plaintiff and Class Members seek all available remedies, damages, and awards resulting from Defendant's violations of New York law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually, and on behalf of all others similarly situated members of the Class, prays for relief and judgement, including entry of an order, pursuant to

each cause of action set forth in this Complaint as follows:

a. For an order certifying that this action may be maintained as a class action, certifying Plaintiff as representatives of the Class, and designating Plaintiff's attorneys as Class counsel;

b. Directing that Target bears the costs of any notice sent to the Class;

c. For actual damages in amounts to be determined by the Court and/or jury;

d. For statutory damages and/or punitive damages, as provided by the applicable statutes invoked above;

e. Restoring all monies that may have been acquired by Target as a result of such unfair and/or deceptive acts or practices;

f. For an award of attorney's fees and costs;

g. For an award of pre- and post-judgment interest on any amounts awarded; and

h. For any other relief the Court might deem just, appropriate, or proper.

**SECOND CAUSE OF ACTION:**
**VIOLATION OF NEW YORK GEN.BUS.LAW § 350, ET SEQ.**

132. Plaintiff repeats, re-alleges and incorporates by reference the allegations set forth in paragraphs one (1) through one hundred seven (107) of this Class Action Complaint as if fully set forth herein verbatim.

133. The New York General Business Law §350 ("GBL §350") provides, in part, as follows: "False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful."

134. New York General Business Law § 350a(1) provides, in part, that: "The term 'false advertising' means advertising, including labeling, of a commodity, . . . if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there

shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof . . . ." *See* GBL §350-a(1).

135. As stated above, to state a claim under GBL §§ 349 and 350, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct, that is (2) materially misleading, and that (3) the plaintiff suffered injury as a result of the allegedly deceptive act or practice."[20]

136. Target is a general merchandise retailer with net sales of $107 billion in fiscal year 2024.[21] Target has approximately 2,000 retail stores nationwide, including 107 in New York[22] and also has an eCommerce website at Target.com.

137. Target sells brand name merchandise as well as markets lines of merchandise under its private brands, including "Market Pantry," [23] which is the brand of the Product at issue in this Class Action Complaint.

138. Target manufactures, labels, distributes, markets, promotes, advertises, and sells Market Pantry coffee creamers, including the Product at issue in this litigation.

139. Defendant's deceptive acts and practices were directed at, and impacted, consumers located in New York.

140. Defendant misleadingly, inaccurately, and deceptively manufactures, labels, advertises and markets its Product to consumers.

141. Defendant's deceptive practices are likely to mislead—and have misled—reasonable consumers acting reasonably, such as Plaintiff and members of the Class.

---

[20] *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2012); *see Goshen v. Mutual Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 n.1 (2002).
[21] https://corporate.target.com/about.
[22] https://corporate.target.com/getmedia/c23bca62-1790-47bd-ad0e-6971aee4f78d/2024-Annual-Report-Target-Corporation.pdf at 21.
[23] Id.

142. Defendant's labeling of the Product contains untrue and materially misleading statements concerning Defendant's Product. The representations contained on the Product stated that the Product contains "about 500 servings" of powdered coffee creamer and the serving size is one teaspoon which Target falsely states is equivalent to 2 grams of the powder Product. *See* Exhibit B. Based on this prominent labeling and advertising, a reasonable consumer purchasing the Product would reasonably believe that the Product contained 500 servings of powdered coffee creamer. Despite this prominent labeling and advertising, the Product does not contain the number of servings promised, because Defendant incorrectly stated the metric mass equivalent of the one teaspoon serving size and used such erroneous metric mass equivalent to determine the number of servings provided by the Product.

143. Defendant has engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of Section 350 of the New York General Business Law. The labeling and packaging of the Product are directed at consumers and are likely to, and have, materially mislead a reasonable consumer acting reasonably under the circumstances.

144. Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Product were, and continue to be, exposed to Defendant's material misrepresentations.

145. Plaintiff and the Class Members have been injured inasmuch as they reasonably relied upon the labeling, packaging, and advertising and paid a price for the Product based on a specified number of servings, but the Product was unable to provide the number of servings stated on its label, and indeed provided at least 13.31% fewer servings than advertised on the label. Accordingly, Plaintiff and the Class Members received less than what they bargained and/or paid

for and were each injured economically in an amount equal to at least 13.31% multiplied by the purchase price of the Product.

146. Since Plaintiff purchased the Product as a product advertising itself as containing 499.50 to 500.49 servings of powdered coffee creamer, and it was not such a product, Plaintiff was damaged in proportion to the servings of powdered coffee creamer not received – at least 13.31% fewer servings.

147. Specifically, Plaintiff and other consumers of the Product, were cheated out of at least 13.31% of the servings they paid for based on the advertising, marketing, packaging and labeling of the Product.

148. Defendant's advertising, packaging, and Product's labeling induced Plaintiff and the Class Members to buy Defendant's Product.

149. New York General Business Law §350-e gives the right to any person who has been injured by reason of any violation of GBL §350 to bring an action in his or her own name to enjoin such unlawful act or practice, an action to recover his or her actual damages or $500, whichever is greater, or both such actions.

150. Additionally, pursuant to New York General Business Law §350-e the Court has discretion to increase the award of damages to an amount not to exceed three times the actual damages, up to $10,000, if the Court finds that the defendant willfully or knowingly violated GBL §350 and discretion to award reasonable attorney's fees to a prevailing plaintiff.

151. Despite being notified of the material misrepresentations described in this Class Action Complaint, Defendant made, and continues to make, these untrue, false, and materially misleading statements regarding the number of one teaspoon servings provided by the Product and that one teaspoon of the powder Product has a mass of 2 grams.

152. As a result of Defendant's recurring, unlawful deceptive acts and practices, Plaintiff and Class Members are entitled to recover the maximum allowed by law based on the following elements: monetary, statutory, compensatory, and treble damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

153. In addition, Plaintiff and Class Members seek reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually, and on behalf of all others similarly situated members of the Class, prays for relief and judgement, including entry of an order, pursuant to each cause of action set forth in this Complaint as follows:

a. For an order certifying that this action may be maintained as a class action, certifying Plaintiff as representatives of the Class, and designating Plaintiff's attorneys as Class counsel;

b. Directing that Target bear the costs of any notice sent to the Class;

c. For actual damages in amounts to be determined by the Court and/or jury;

d. For statutory damages and/or punitive damages, as provided by the applicable statutes invoked above;

e. Restoring all monies that may have been acquired by Target as a result of such unfair and/or deceptive acts or practices;

f. For an award of attorney's fees and costs;

g. For an award of pre- and post-judgment interest on any amounts awarded; and

h. For any other relief the Court might deem just, appropriate, or proper.

**THIRD CAUSE OF ACTION:**
**BREACH OF EXPRESS WARRANTY**

154. Plaintiff repeats, re-alleges and incorporates by reference the allegations set forth in paragraphs one (1) through one hundred seven (107) of this Class Action Complaint as if fully set forth herein verbatim.

155. To the extent that the statute of limitations vary as between Plaintiff's First and Second Causes of Action on the one hand and Plaintiff's Third Cause of Action on the other hand, Plaintiff pleads the cause of action in the alternative where the limitations periods overlap.

156. Plaintiff and Class Members formed a contract and were in privity with Defendant at the time Plaintiff and members of the Class purchased the Product.

157. Plaintiff's October 20, 2023 purchase of the Product was from a Target store located in New York creating privity of contract between Plaintiff and Target. The receipt is attached as Exhibit "A."

158. The Product's packaging and labels include promises, representations, and affirmations of fact.

159. The Product's labeling contained affirmations of fact and promises that the Product contained a specified number of one teaspoon servings and that the one teaspoon serving has a mass of 2 grams.

160. The terms of the contract include the promises and affirmations of fact made by Defendant on the Product's packaging and labels and through marketing and advertising, as described above. Target created express warranties through written descriptions on its Product that the Product contained a specified number of one teaspoon servings and that one teaspoon of the Product has a mass of 2 grams.

161. The number of servings and serving size representations are material, objective affirmations or statements of fact about the Product that is part of the basis of the bargain.

162. Statements about the number of servings and size of those servings supplied by the Product naturally and logically induced the Plaintiff to purchase the Product.

163. Plaintiff in fact relied upon the serving size and number of serving representations on the Product.

164. As alleged in detail above, Target did not provide a Product with the serving size and number of servings promised, causing Plaintiff to suffer economic injury and receive less than the basis of the bargain.

165. Target breached the express warranties because, despite the above-referenced representations, based on expert testing the metric mass equivalent of a one teaspoon serving of the Product is not 2 grams as stated on the Product's NFP but is in fact materially more than 2 grams.

166. Additionally, the Product's nutrition facts panel states that the contents of the Product provide a specified number of one teaspoon servings when in fact the Product will yield at least 13.31% fewer servings because Target incorrectly calculated the number of servings provided by the Product by using the erroneously stated metric mass equivalent of 2g per teaspoon.

167. In addition, to induce Plaintiff and all members of the putative class to purchase the Product from Target in store, Target offers a 365-day money-back return guarantee.

168. As alleged more specifically in Paragraph 70, written notice was provided to Target on February 15, 2024. Target has not provided or tendered the refund or given any reason for not providing the refund in conformance with the refund guarantee.

169. Target's 365-day refund guarantee as to the Product constitutes an additional, independent, material, objective affirmation or statement of fact about the Product that is part of the basis of the bargain.

170. This additional refund guarantee by Target naturally and logically was an independent inducement to Plaintiff to purchase the Product from a Target brick and mortar store. Plaintiff in fact relied upon this additional money-back guarantee in deciding whether to purchase the Product.

171. Target failed to keep its promise about providing the money-back guarantee, causing Plaintiff to suffer economic injury and receive less than the basis of the bargain.

172. Additionally, Target has profited, and continues to profit, from these deceptive sales of the Product to the public.

173. Target knew, or should have known, about the facts constituting the breach of these express warranties.

174. Plaintiff seeks all available remedies, damages, and awards resulting from Target's breaches of express warranties.

175. Defendant knew, or should have known, about the defect in the Product.

176. As a direct and proximate result of Defendant's breach of warranties concerning the number of servings of powdered coffee creamer contained in the Product, Plaintiff and members of the Class have suffered and will continue to suffer damages.

177. Plaintiff seeks all available remedies, damages, and awards resulting from Defendant's breaches of express warranties.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually, and on behalf of all others similarly situated

members of the Class, prays for relief and judgement, including entry of an order, pursuant to each cause of action set forth in this Complaint as follows:

a. For an order certifying that this action may be maintained as a class action, certifying Plaintiff as representatives of the Class, and designating Plaintiff's attorneys as Class counsel;

b. Directing that Defendant bear the costs of any notice sent to the Class;

c. For actual damages in amounts to be determined by the Court and/or jury;

d. For an award of attorney's fees and costs;

e. For an award of pre- and post-judgment interest on any amounts awarded; and

f. For any other relief the Court might deem just, appropriate, or proper.

**DEMAND FOR JURY TRIAL**

178. Plaintiff hereby demands trial by jury on all issues so triable.

Dated: April 24, 2026 Respectfully submitted,

**The Law Offices of Howard W. Rubinstein, P.C.**

By: */s/ Ariana V. Held*
Ariana V. Held (NY State Bar No. 6024723),
Of Counsel
305 Broadway, Suite 700
New York, New York 10007
(215) 500-3289
ariana@avheld.com