**Exhibit D**

**Notice Letter**

[47 Pages Follow]

# THE LAW OFFICES OF HOWARD W. RUBINSTEIN, P.A.

1645 Palm Beach Lakes Blvd, Suite 1200, West Palm Beach, Florida 33404
625 E. Main, Suite 102 Box 308, Aspen, Colorado 81611
305 Broadway, Suite 700, New York, New York 10007
(832) 715-2788 | howardr@pdq.net


**CONFIDENTIAL SETTLEMENT COMMUNICATION PURSUANT TO § 408 OF THE FEDERAL RULES OF EVIDENCE AND ALL OTHER APPLICABLE PRIVILEGES**

February 13, 2024

Target Corporation *Via FedEx*
Attn: Legal Department
Attn: Don H. Liu – Executive Vice President and Chief Legal & Risk Officer
1000 Nicollet Mall
Minneapolis, Minnesota 55403

CT Corporation System *Via Fed Ex*
28 Liberty Street
New York, NY 10005

RE: **Notice of Violation of New York's Consumer Protection From Deceptive Acts and Practices Statute under Article 22-A of the New York General Business Law ("GBL") and Breach of Express Warranty**

SUBJECT: **False, Deceptive, and Misleading Labeling: Market Pantry Original Coffee Creamer (35.3 oz)**

Dear Mr. Liu:

Pursuant to Article 22-A of the GBL, §§ 349, et seq., and §§ 350, et seq. (collectively, the "**NY Consumer Protection Law**") we hereby notify you, Target Corporation and/or its subsidiaries or affiliates (collectively hereafter "**Target**"), that you have violated provisions of the NY Consumer Protection Law and breached various express warranties. Specifically, you have violated §§ 349 and 350 of Article 22-A of the GBL by marketing, promoting, advertising, and selling Market Pantry Original Coffee Creamer (35.3 oz), hereafter referred to as "**the Product**," using false, deceptive and materially misleading trade practices and advertising in derogation of New York law.

Images of the Product's label and nutrition panel are attached and incorporated hereto as **EXHIBIT A**, for reference.

As set forth above, Target sells (or has sold) throughout the United States the Product described above. The Product is prominently advertised, marketed, and sold as containing a specified number of servings. The Product's nutrition facts panel claims that the Product provides "about 500 servings per container" and that the serving size for the Product is "1 tsp. (2g)" (see

Exhibit A). The labelling of the Product fails to comply with relevant Federal regulations and the contents of the Product are not capable of providing the promised servings had those regulations been followed.

Federal regulations require that "all nutrient and food component quantities shall be declared in relation to a serving as defined in this section."[1] "Serving" or "serving size" is defined as "an amount of food customarily consumed per eating occasion by persons 4 years of age or older which is expressed in a common household measure that is appropriate to the food."[2] In addition, the metric unit equivalent of the common household serving size must be reported parenthetically after the common household measure.[3] Thus, a "serving" is not a metric measure (such as "2g") but is instead a common household measure (such as "1 teaspoon"). Target is required to express the serving size in a common household measure and to report the metric equivalent thereof, not the other way around. Additionally, when reporting the metric unit equivalent of the relevant common household measure Target is required to "round to the nearest whole number except for quantities that are less than 5g (mL). The gram (mL) quantity between 2 and 5g (mL) should be rounded to the nearest 0.5g (mL) and the g (mL) quantity less than 2g (mL) should be expressed in 0.1g (mL) increments."[4] Finally, "determination of the number of servings per container shall be based on the serving size of the product"[5].

Target failed to meet these labeling requirements for the Product by: (1) improperly stating the metric mass equivalent of the stated serving size, and (2) incorrectly calculating the number of servings provided by each unit of the Product from the improperly stated metric mass equivalent of the stated serving size.

**1. Improper Metric Mass Equivalent of Serving Size** – Target correctly identified the Reference Amount Customarily Consumed (RACC) for "cream or cream substitutes, powder" as "2g" and the appropriate serving size label statement as "__ tsp (__ g)".[6] However, on information and belief, Target erroneously conflated the RACC and the metric mass equivalent of the serving size. A "serving" is separate and distinct from a RACC. "For nondiscrete bulk products (e.g., breakfast cereal, flour, sugar, dry mixes, concentrates, pancake mixes, macaroni and cheese kits) […] the serving size shall be the amount in household measure that most closely approximates the reference amount"[7]. Target correctly determined that teaspoons are the common household measure for the serving size label statement and claims that the metric mass equivalent of this serving size is 2g. However, expert testing, attached and incorporated hereto as **EXHIBIT B**, establishes that the metric mass equivalent of a 1 teaspoon serving of the Product is actually 2.4 grams, 20% heavier than claimed[8]. Target is required to state the actual metric mass

[1] 21 C.F.R. § 101.9(b)
[2] 21 C.F.R. §§ 101.9(b)(1), emphasis added
[3] 21 C.F.R. §§ 101.9(b)(7)
[4] 21 C.F.R. §§ 101.9(b)(7)(ii), emphasis added
[5] 21 C.F.R. §§ 101.9(b)(8), emphasis added
[6] 21 C.F.R. § 101.12(b) Table 2
[7] 21 C.F.R. §101.9(b)(2)(iii), emphasis added
[8] Biogen Laboratory Developments, LLC tested a different Product sample on June 30, 2023, and obtained similar results. The sample tested in June had 89.8 (rather than 82.7) missing servings with an average

equivalent of a 1-teaspoon serving of the Product, which would be rounded to 2.5g for the label statement, and cannot simply claim the RACC value. Guidance from the U.S. Food and Drug Administration makes this clear:

> "The RACC for my product is 50 g; however, a single serving of my product actually weighs 54 g because 54 g is the weight of the 1-cup household measure most closely approximating the RACC. How should the serving size be declared? Is the nutrition information based on the 50-g RACC, or the 1-cup serving size (weighing 54 g)?
>
> The serving size and the nutrition information on the label are based on the household unit closest to the RACC (i.e., 1 cup). The RACC is used as the starting point to determine the serving size for the foods in each product category (see 21 CFR 101.9(b)(2)), but the actual amount of the product per serving (i.e., 54 g) is used to calculate the nutrient amounts for the nutrition information in the Nutrition Facts label."[9]

**2. Incorrect Servings Calculation** – Because the Product does not correctly state the metric mass equivalent of the 1 teaspoon serving size and the net mass of the Product is divided by this erroneous metric mass to calculate the number of servings provided (e.g., 1,000g net weight ÷ 2g per serving = 500 servings), the Product materially misstates the number of servings it yields. Expert testing establishes that the Product, as designed and sold, yields 82.7 fewer servings than claimed on the Product's label. This means consumers of the Market Pantry Original Coffee Creamer were cheated out of at least 16.6% of the servings they paid for based on the Product's labeling.

Providing 417 servings where 500 servings were promised makes the damage model straightforward: e.g. (417 - 500) ÷ 500 × purchase price = per unit damage. However, the NY Consumer Protection Law provides for statutory damages rather than limiting a plaintiff's recovery to their actual damages. The NY Consumer Protection Law guarantees minimum statutory damages of $50 (for a violation of Section 349 of the GBL) and $500 (for a violation of Section 350 of the GBL). Although a class action seeking statutory damages cannot be brought in New York state court pursuant to CPLR 901(b), the U.S. Supreme Court held that Federal Rule of Civil Procedure 23 preempts CPLR 901(b)'s statutory damages prohibition in class actions filed in federal court. See *Shady Grove Orthopedic Assocs., P.A. v Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). Hence, [s]tatutory damages are permissible in class actions alleging [GBL] violations brought in federal court – even if those same damages would be impermissible in state court. *Famular v. Whirlpool Corp.*, 2019 WL 1254882, at *11 (S.D.N.Y. March 19, 2019). Additionally, courts increasingly allow statutory recovery on a per-unit, not per-person, basis. See, e.g., *Montera v.*

---

shortage of 18%. The weight of the container of the June sample Product was 984g (rather than 1001.4g). Had the June sample contained 1,000 grams as stated on its label, the June sample would have been short an average of 16.8% of the promised servings (which is nearly identical to the 16.6% servings shortage found in the current Product). The average weight per teaspoon of the June sample was 2.4g +/- 0.05.

[9] FDA. 2019. Food Labeling: Serving Sizes of Foods That Can Reasonably Be Consumed At One Eating Occasion, Reference Amounts Customarily Consumed, Serving Size-Related Issues, Dual-Column Labeling, and Miscellaneous Topics: Guidance for Industry. Item B.5. (emphasis added) https://www.fda.gov/media/133699/download

*Premier Nutrition Corp.*, No. 16-cv-06980-RS, 2022 U.S. Dist. LEXIS 75843, at *21 (N.D. Cal. Apr. 26, 2022).

In *Montera*, a jury found that the maker of "Joint Juice" drink products had violated the NY Consumer Protection Law by making false claims about the beverage's ability to provide consumers with "pain and/or arthritis relief" and awarded the class approximately $8 million in statutory damages (i.e., the amount of damages owed under GBL Section 349(h), $50 per unit sold). See *Montera v. Premier Nutrition Corp.*, 2022 WL 3348573 (N.D. Cal. August 12, 2022). Thus, if Target sold 110,000 units of Product in New York over the past four years that would yield damages on behalf of New York purchasers of $5.5 million (at $50 per product) and $55 million (at $500 per product).

As you are aware, cases involving overstatement of the number of servings of powdered coffee creamers and other powdered or granular products contained within a retail package have been the subject of class action settlements, including Coffee Mate creamer (which was settled in Missouri) and Maxwell House coffee (which was a nationwide class settlement in the Southern District of Florida). The Coffee Mate creamer case, *Nicholas Cahill, et al. v. Nestle USA, Inc.*, concerned allegations very similar to those of Target's Product. In *Cahill*, third party expert testing found that the metric mass equivalent of a 1 teaspoon serving of the Coffee Mate powdered coffee creamer was 2.6g rather than the 2g claimed on the label of the product. Because Nestle USA, Inc. erroneously calculated the number of servings provided by each container of the Coffee Mate product from the 2g mass, and not the correct 2.6g mass, it was cheating its consumers out of 23.3% of the servings promised by the label. Nestle USA, Inc. settled the case with plaintiffs and even before they settled the case, Nestle revised the serving size of the Coffee Mate product to "¾ tsp (2g)" in accordance with the application of the Federal regulations discussed above. This is the same issue with Target's Product. The metric mass equivalent of Target's Product is incorrectly stated on its label and the calculation of the number of servings provided fails to comply with Federal regulations.

The predecessor case of *Yonan v. Nestle USA, Inc.* (S.D. Florida) was resolved as part of the *Cahill* case discussed above and Ms. Yonan was named a class representative in Cahill. The court's ruling on the defendant's motion to dismiss in *Yonan* reads, in part: "Therefore, the question becomes whether this alleged difference in weight can form the basis of a FDUTPA claim. The Court finds that it does." Universally, conservative, or liberal judges don't have much tolerance for merchants that are alleged to have cheated their customers.

We represent consumer, Astoria Sassano ("**Plaintiff**"), who purchased the Market Pantry Original Coffee Creamer (35.3 oz) at a New York Target store in objectively reasonable reliance upon the deceptive and misleading representations made by Target. The Plaintiff is a natural person and resident of New York and Florida. The Plaintiff suffered an economic loss through purchasing the misbranded and mislabeled Product because she received16.6% fewer servings than represented, as shown in the test results attached hereto as Exhibit B.

Target's conduct in marketing, promoting, advertising, and selling the Product with the issues discussed above violates the NY Consumer Protection Law because Target has used false, deceptive and misleading trade practices and deceived and materially misled the Plaintiff as

Target has represented the Product as containing 500 servings while the Product cannot honestly and legally be so represented. Additionally, Target has also breached express warranties related to the Product because it cannot be used to provide anywhere close to the number of servings represented.

Based on the foregoing, demand is hereby made, that Target agree to do and complete the following:

1. Removal of False and Misleading Content

Agree to provide notice in the advertising, packaging, marketing, promotion selling, and labeling of the Product correcting the servings misstatements and misrepresentations about the Product.

2. Corrective Action

Provide a nationwide advertising campaign that fully discloses to consumers, among other things, the above misstatements.

3. Damages to the Plaintiffs and Those Similarly Situated.

Pursuant to the NY Consumer Protection Law, and based on the foregoing, we hereby demand that Target pay, at the minimum, any and all individuals who purchased the Product during the applicable statute of limitations period the greater of (a) restitution of not less than 16.6% of all amounts paid by any and all individuals who purchased the Product during the applicable statute of limitations period and (b) statutory damages as provided by the NY Consumer Protection Law. Target shall offer the Plaintiff Class statutory damages for, or restitution in the above-referenced percentages of the purchase price of, all units sold based on national sales. The restitution or statutory damage component of this case would be in addition to Target providing for payment of all costs of administering such a program and reasonable attorney's fees.

If we cannot reach a negotiated resolution to this claim, it is our intent to file suit to protect the legal rights of Plaintiff and a putative class of purchasers of the Product. In that event, we would seek all available remedies available under applicable NEW YORK LAW, INCLUDING BUT NOT LIMITED TO, RECOVERING ACTUAL DAMAGES SUFFERED BY ALL PURCHASERS OF THE PRODUCT AND ATTORNEY FEES, AND ALL OTHER APPLICABLE COMMON LAWS AND STATUTORY REMEDIES. FURTHERMORE, UNLESS WE CAN REACH AN AMICABLE RESOLUTION, WE WILL BE FORCED TO SEEK AN INJUNCTION AGAINST TARGET SELLING THE DECEPTIVE PRODUCT AND ALSO FILE A BREACH OF CONTRACT ACTION AGAINST TARGET SEEKING DAMAGES PURSUANT TO NEW YORK LAW.

This is truly a rare case. Plaintiff's position depends on the proposition that Target has failed to correctly state the mass of the Product's serving size and thereby erroneously calculated the number of servings provided by the Product. The Product is misbranded and cannot be legally sold in New York (or any other state). We hope to hear from you soon so we can try to

resolve this matter and avoid expensive, protracted litigation. If we cannot negotiate an amicable resolution, suit will be filed soon against all proper defendants and in an appropriate jurisdiction. A draft of such a suit is attached and incorporated hereto as **EXHIBIT C**. If you have any questions regarding this notice and demand, please contact the undersigned attorney. If you are not manufacturing the Product, please provide us with the name of the real party in interest.

Kind thanks for your time and attention,

By: /s/ Howard W. Rubinstein______
Howard W. Rubinstein, Esq.

**EXHIBIT A**




Market Pantry Original Coffee Creamer (35.3 oz)
Exhibit A - Page 1 of 2




Market Pantry Original Coffee Creamer (35.3 oz)
Exhibit A - Page 2 of 2

# EXHIBIT B

BIOGEN
Laboratory Developments, LLC
36740 E. Historic Columbia River Highway Corbett, OR 97019
(888) 9 BIOGEN | (503) 705.0666 | Email: admin@biogenlabdevelopments.com

**The Offices of Howard Rubinstein**
**4000 N. Ocean Drive East Tower**
**Suite 201**
**Riviera Beach, FL 33404**
**Howard Rubinstein**
**(832) 715.2788 Phone**
**(561) 688.0630 Fax**

**Report Date: January 22, 2024**
**Report No.: 231106001HR**
**Received Date: November 6, 2023**
**Received Conditions: Ambient**
**Storage Conditions: Ambient**
**Analysis: Label Claim Verification**
**PO No.: NA**

## CERTIFICATE OF ANALYSIS

**Results:**

**Table 1 – Data Summary of Total Servings Available Per Retail Container**

| Sample No: | Sample Description | Servings Claimed | Actual Servings | Servings Missing | Total Shortage |
|---|---|---|---|---|---|
| **231106001-HR** | **35.3oz Market Pantry Original Coffee Creamer**<br>BB JUN 21 2025 / 03B06223 0210 | **500** | **417.3** | **82.7** | **16.6%** |

Analysis based on the retail label which claimed to contain 500 1 teaspoon (2g) servings per 35.3oz container

**Table 2 – Data Summary of Serving Weight per Retail Container**

| Sample No: | Sample Description | Average Weight per Serving (1 Teaspoon) | Weight per Container | Total Servings per Container |
|---|---|---|---|---|
| **231106001-HR** | **35.3oz Market Pantry Original Coffee Creamer** | **2.4g +/- 0.07** | **1001.4g** | **417.3** |

Average weight per serving based on average of 12 measurements.

BIOGEN
Laboratory Developments, LLC
36740 E. Historic Columbia River Highway Corbett, OR 97019
(888) 9 BIOGEN | (503) 705.0666 | Email: admin@biogenlabdevelopments.com

**The Offices of Howard Rubinstein**
**4000 N. Ocean Drive East Tower**
**Suite 201**
**Riviera Beach, FL 33404**
**Howard Rubinstein**
**(832) 715.2788 Phone**
**(561) 688.0630 Fax**

**Report Date: January 22, 2024**
**Report No.: 231106001HR**
**Received Date: November 6, 2023**
**Received Conditions: Ambient**
**Storage Conditions: Ambient**
**Analysis: Label Claim Verification**
**PO No.: NA**

## CERTIFICATE OF ANALYSIS

**Analysis Summary:**




**Figure 1:** Market Pantry Coffee Creamer as received; Claim: 500 servings of 1 teaspoon (2g) per container

BIOGEN Laboratory Developments, LLC
36740 E. Historic Columbia River Highway Corbett, OR 97019
(888) 9 BIOGEN | (503) 705.0666 | Email: admin@biogenlabdevelopments.com

**The Offices of Howard Rubinstein**
**4000 N. Ocean Drive East Tower**
**Suite 201**
**Riviera Beach, FL 33404**
**Howard Rubinstein**
**(832) 715.2788 Phone**
**(561) 688.0630 Fax**

**Report Date: January 22, 2024**
**Report No.: 231106001HR**
**Received Date: November 6, 2023**
**Received Conditions: Ambient**
**Storage Conditions: Ambient**
**Analysis: Label Claim Verification**
**PO No.: NA**

## CERTIFICATE OF ANALYSIS

**Analysis Summary:**

A retail container of Market Pantry Original Coffee Creamer was received and examined to verify the total number of servings provided in each container. A claim was printed on the retail nutrition facts label which indicated there were 500 servings of 1 teaspoon, claimed to weigh 2g, in each retail container of coffee creamer (Figure 1).

The total contents were emptied to determine the total product weight and to loosen the product within the container. The weight per serving was measured by recording the weight of 12 replicate servings using a household 1 teaspoon measuring device, and the averages were calculated. The total product weight measured in the container was used to calculate the total servings per container available using the average weight per serving (Table 2).

The container received and tested contained the proper net weight of coffee creamer as shown on the retail package; yet it fell short on the total number of servings available by 16.6% (Table 1). The overall shortage of servings was determined to be due to the product having a larger serving weight per 1 teaspoon serving than the 2g listed on the product label. The actual average product weight per serving using the household measure was 2.4g (20% larger than the label claims). As a result of this discrepancy, the coffee creamer container fell short of the number of servings claimed by a total of nearly 83 servings, equivalent to 16.6% of the total labeled servings.

The data indicates the manufacturer made an error when claiming the household serving of 1 teaspoon of coffee creamer was equivalent to 2g.

Approved by:

Nidal Kahl, Director

*Test results pertain only to the samples tested with reasonable uncertainty. This report shall not be reproduced except in its entirety, without written approval from BLD. Samples may be discarded after 30 days of receipt.*

# EXHIBIT C

[remainder of page deliberately blank]

31 Pages Follow

**UNITED STATES DISTRICT COURT**
**[To Be Determined]**

| | |
|---|---|
| Astorria Sassano, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>- against -<br><br>Target Corporation,<br><br>Defendant, | _____CV__________<br><br>CLASS ACTION COMPLAINT<br><br>Jury Trial Demanded |

DRAFT

## CLASS ACTION COMPLAINT

Plaintiff, Astorria Sassano ("Plaintiff"), alleges upon information and belief, including investigation conducted by her attorneys, except for allegations pertaining to Plaintiff, which are based on her personal knowledge:

## NATURE OF THE ACTION

1. Plaintiff, Astorria Sassano, brings this consumer class action lawsuit individually, and on behalf of similarly situated consumers ("Class Members") who purchased for personal, family or household use the Market Pantry Original Coffee Creamer product listed on the attached **Exhibit "A"** (the "Product") which Exhibit "A" is incorporated herein and made a part hereof.

2. Plaintiff, a New York and Florida resident, purchased the Product in New York as a result of the materially misleading and deceptive trade practices of Target Corporation, and its affiliates (collectively, "Target" or "Defendant") in derogation of New York law.

Specifically, Target violated New York General Business Law §349 and §350, New York's consumer protection statutes, and breached various express warranties by marketing, promoting, and selling the Product.

3. Plaintiff purchased the Product based on the Product's labeling and advertising stating that the Product contains "about 500 servings per container" and that the serving size for the Product is "1 tsp. (2g)", when in fact based on third-party laboratory testing the Product provides consumers with only 417.3 servings, 16.6% fewer servings than promised by the Product's label.

4. Based on relevant Federal regulations, Target erroneously stated the metric mass equivalent of the stated serving size, and, as a result, the Product did not contain the promised number of servings stated on the Product's label and advertising.

5. Defendant unlawfully marketed, advertised, sold, and distributed the Product injuring Plaintiff and the other Class Members.

**PARTIES**

6. Plaintiff, Astorria Sassano, is an individual consumer over the age of eighteen (18) who is a part-time resident of Hampton Bays, Suffolk County, New York. Plaintiff seeks injunctive relief and damages on behalf of herself and the Class, and respectfully requests a jury trial as to damages.

7. Defendant, Target Corporation, is a Minnesota corporation with a principal place of business in Minneapolis, Minnesota.

8. Target is authorized to do business in the State of New York as a foreign corporation.

DRAFT

9. Target is a general merchandise retailer with a total revenue of $109 billion in fiscal year 2022[1]. Target has approximately 2,000 retail stores nationwide, including 100 in New York[2] and also has an eCommerce website at Target.com.

10. Target sells brand name merchandise as well as markets lines of merchandise under its private brands, including "Market Pantry" [3], which is the brand of the Product at issue in this Class Action Complaint.

11. Target manufactures, markets, promotes, advertises, and sells Market Pantry coffee creamers, including the Product at issue in this litigation.

12. Plaintiff alleges that, at all times relevant herein, Target and its subsidiaries, affiliates, and other related entities and suppliers, as well as their respective employees, were the agents, servants, or employees of Target and at all times relevant herein, each was acting within the purpose and scope of that agency or employment.

13. In addition, Plaintiff alleges that, in committing the wrongful acts alleged herein, Target, in concert with its subsidiaries, affiliates, and/or other related entities and suppliers, and their respective employees, planned, participated in, and furthered a common scheme to induce members of the public to purchase the Product by means of untrue, misleading, deceptive, and/or fraudulent representations.

14. Whenever reference in this Class Action Complaint is made to any act by Target or its subsidiaries, affiliates, distributors, retailers and other related entities and suppliers, such allegation shall be deemed to mean that the principals, officers, directors, employees, agents, and/or representatives of Target committed, knew of, performed, authorized, ratified and/or

DRAFT

---

[1] https://corporate.target.com/about
[2] https://corporate.target.com/getmedia/0817b557-7676-440b-a85d-3f48954ff919/2022-Target-Annual-Report.pdf
[3] Id.

directed that act or transaction on behalf of Target while actively engaged in the scope of their duties.

**JURISDICTION & VENUE**

15. This Court has jurisdiction over the subject matter presented by this Complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), which explicitly provides for the original jurisdiction of the Federal Courts of any class action in which any member of the plaintiff class is a citizen of a state different from any defendant, and in which the matter in controversy exceeds in the aggregate the sum of $5,000,000.00, exclusive of interest and costs. Pursuant to 28 U.S.C. § 1332(d)(2)(A), Plaintiff alleges that the total claims of the members of the Plaintiff's Class in this action are in excess of $5,000,000.00, in the aggregate, including any statutory damages, and exclusive of interest and costs, and as set forth below, diversity of citizenship exists under CAFA because, as more fully set forth below, Plaintiff is a citizen of both New York and Florida, and Defendant is incorporated in Minnesota with a principal place of business in Minnesota. Thus, the parties are citizens of different states. Based on information and belief regarding nationwide sales of the coffee creamer product at issue in this lawsuit over the most recent four-year period, Plaintiff has a good faith basis to plead that the total claims of the Plaintiff's Class (New York residents) exceed $5,000,000.00.

16. Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2) because of a substantial part of the events or omissions giving rise to the claim occurred in this District. Specifically, Plaintiff purchased the Product in Commack, Suffolk County, New York and Defendant has intentionally availed itself of the laws and markets within this District.

DRAFT

## FACTUAL ALLEGATIONS

17. Plaintiff, Astorria Sassano, has purchased the Market Pantry Original Coffee Creamer (35.3 oz) Product for some time, including within the last year, and most recently from the Target store located at 98 Veterans Memorial Highway, Commack, New York 11725-3432.

18. The Product that is the subject of this litigation is comprised of powdered coffee creamer provided to consumers for the purpose of mixing with coffee.

19. The Product's nutrition facts panel on the back of the Product claims that the Product provides "**about 500 servings per container**" and that the serving size for the Product is "1 tsp. (2g)." Under FDA regulations "about" means the container contains between 499.50 and 500.49 servings.[4]

20. The front label of the Product states that the net weight of the Product is "1kg", which is equivalent to 1,000 grams.

21. Photographs of the Product's labeling and nutrition panels are attached hereto and incorporated herein as **Exhibit "B."**

22. In addition, Target advertises the Product – other than on the label – as containing "about 500 servings" through target.com. The Product's webpage on target.com also advertises the net weight of the Product as containing as "35.3 oz" or "1 kg" and advertises that the serving size of the Product is "1 tsp".[5]

23. Photographs of this online advertisement are attached hereto and incorporated herein as **Exhibit "C"**.

DRAFT

[4] 21 C.F.R. §§ 101.9(b)(8)
[5] https://www.target.com/p/original-dairy-creamer-artificially-flavored-35-3oz-market-pantry-8482/-/A-81827663#lnk=sametab

24. The advertising and labeling for the Product, including the Product purchased by Plaintiff, were prepared and/or approved by Target and its agents.

25. Based on this labeling and advertising, including the 2g metric mass equivalent of the serving size listed on the Product's nutritional facts panel located on the back of the Product, a consumer purchasing this Product would reasonably believe that the Product contains about **500 servings of powdered coffee creamer**.

26. However, the labeling of the Product does not comply with relevant Federal regulations and the contents of the Product cannot yield the 500 servings promised had those Federal regulations been correctly followed.

27. Federal regulations require that Target states in the nutrition facts panel of its label the serving size in a common household measure[6] and, parenthetically after the common household measure, the metric unit equivalent thereof[7]. Additionally, any gram (mL) quantity between 2 and 5g (mL) should be rounded to the nearest .5mg (mL)."[8]

28. The Product's nutrition facts label states that one (1) teaspoon is the common household measure for the Product and that the metric mass equivalent of the 1 teaspoon serving size is 2g. *See* Exhibit B.

29. However, expert testing of the Product, a copy of which is attached hereto and incorporated herein as **Exhibit "D"**, establishes that the metric mass equivalent of a 1 teaspoon serving of the Product is actually 2.4 grams, 20% heavier than the 2 grams claimed on the nutrition facts panel on its label.

DRAFT

---

[6] 21 C.F.R. §§ 101.9(b)(1)
[7] 21 C.F.R. §§ 101.9(b)(7)
[8] 21 C.F.R. §§ 101.9(b)(7)(ii)

30. As required under the Federal regulations, the metric unit equivalent of the 1 teaspoon serving of the Product[9] rounded to the nearest .5mg (mL)[10] should be parenthetically disclosed after the common household measure of 1 teaspoon.

31. Accordingly, the Product's nutrition facts panel should have stated "2.5g" rather than "2g" for the metric mass equivalent of the 1 teaspoon serving of the Product.

32. Target failed to meet this Federal labeling requirement by erroneously stating the metric mass equivalent of the stated serving size.

33. Furthermore, Target incorrectly calculated the number of servings provided by the Product given that the "determination of the number of servings per container shall be based on the serving size of the product"[11] and that a "serving" is "expressed in a common household measure"[12].

34. The net mass of the Product listed on the Product label (*See* Exhibit B) was divided by the erroneous metric mass equivalent of the 1 teaspoon serving size, 2 grams, to calculate the number of servings the Product provides (i.e., 1,000g net weight ÷ 2g per serving = 500 servings) resulting in a significant misstatement of the number of servings the Product yields.

35. Expert testing establishes that the Product, as designed and sold, yields 82.7fewer servings than claimed on the Product's label. This means consumers of the Product were cheated out of 16.6% of the servings they paid for.

36. The advertising and labeling for the Product, including the Product purchased by Plaintiff, were prepared and/or approved by Target and its agents, and were disseminated and marketed by Target and its agents through advertising and labeling containing the

DRAFT

---

[9] 21 C.F.R. §§ 101.9(b)(7)
[10] 21 C.F.R. §§ 101.9(b)(7)(ii)
[11] 21 C.F.R. §§ 101.9(b)(8)
[12] 21 C.F.R. §§ 101.9(b)(1)

misrepresentations alleged herein.

37. The advertising for the Product was designed to encourage consumers to purchase the Product and reasonably misled reasonable consumers, including Plaintiff and the Class Members, into purchasing the Product.

38. Target markets and distributes the Product and is the company that created and/or authorized the unlawful, fraudulent, misleading and/or deceptive advertising, labeling, packaging and statements about the Product.

39. Since Plaintiff purchased the Product as a product advertising itself as containing about 500 servings of powdered coffee creamer, and it was not such a product, Plaintiff was damaged in proportion to the servings of powdered coffee creamer not received.

40. Specifically, Plaintiff and other consumers of the Product, were cheated out of 16.6% of the servings they paid for based on the advertising, marketing, packaging and labeling of the Product.

41. The Product's representations, as outlined and explained above, which are uniformly, consistently and prominently displayed on each individual package of the Product are untrue, misleading and deceive the public. In making this allegation that the representations on the packaging regarding the number of servings contained in the package are untrue, Plaintiff relies upon independent laboratory testing, attached as Exhibit "C," showing that the Product contains an average of 417 servings, 16.6% fewer servings than the 500 servings claimed by the Product's label, meaning that 16.6% of the promised product servings were not delivered to Plaintiff and the putative Class.

42. Additionally, on information and reasonable belief, Plaintiff alleges that Target has had actual knowledge of the deceptive advertising and labeling of its Product including the

DRAFT

same independent laboratory testing depicting the 82.7 missing servings as the testing attached hereto as Exhibit "D" and to our knowledge has not taken any corrective actions.

43. On information and reasonable belief, Plaintiff purchased the Product on at least one occasion following the date on which Target had actual knowledge of the deceptively labeled and advertised Product. Plaintiff was unaware of the deceptive, false and materially misleading labeling and advertising of the Product at such time.

44. Upon information and reasonable belief, despite Target's knowledge of the falseness and deceptiveness of the Product's labeling and advertising, Target has continued to manufacture, market, and distribute the Product, using the unlawful, fraudulent, misleading and/or deceptive advertising and statements about the Product.

45. Plaintiff is aggrieved by the deceptively labeled and marketed Product as she relied on the misleading and deceptive labeling and advertising and was deprived of the benefit of the bargain she reasonably anticipated from the Product's labeling and advertising; specifically, she was deprived of the benefit she paid for, a product labeled and advertised as containing about 500 servings of powdered coffee creamer, when in actuality based on expert testing the Product contains on average only 417 servings.

46. Reasonable consumers, such as the Plaintiff, will continue to be aggrieved by the deceptive and misleading labeling and advertising of the Product, as reasonable consumers will continue to make the plausible connection that they are purchasing a Product containing 500 servings of powdered coffee creamer.

47. Upon information and reasonable belief, Target could sell the Product without deceptive labeling by, for example, correctly stating the metric mass of a 1 teaspoon serving and adjusting the number of 1 teaspoon servings yielded by the Product according to the actual metric

DRAFT

mass of each 1 teaspoon serving.

48. Target touts that it stands for "More for your money" as "Expect More. Pay Less" is its brand promise.[13] Target failed to meet its own delineated brand promise in committing the wrongful acts alleged herein.

**PLAINTIFF'S ALLEGATIONS**

49. Plaintiff, Astorria Sassano, has purchased the Market Pantry Original Coffee Creamer (35.3 oz) Product for some time, including within the last year, and most recently from the Target store located at 98 Veterans Memorial Highway, Commack, New York 11725-3432.

50. Plaintiff is aggrieved by the deceptively labeled and marketed Product as she relied on the materially misleading and deceptive labeling and advertising and was deprived of the benefit of the bargain she reasonably anticipated from the Product's labeling and advertising; specifically, she was deprived of the benefit she paid for, a product labeled and advertised as containing about 500 servings of powdered coffee creamer, when in actuality based on expert testing the Product contains on average only 417 servings.

51. Since Plaintiff purchased the Product advertised as capable of providing about 500 servings of powdered coffee creamer and it was not such product, Plaintiff was damaged in proportion to the servings of powdered coffee creamer not received.

52. The Product's representations, as outlined and explained above, which are uniformly, consistently, and prominently displayed on each individual package of the Product and on Defendant's website are untrue, misleading, and deceive the public.

53. Reasonable consumers, such as Plaintiff, will continue to be aggrieved by the deceptive and misleading labeling and advertising of the Product, as reasonable consumers will

[13] https://corporate.target.com/about/purpose-history/our-commitments

DRAFT

continue to reasonably believe that they are purchasing Product containing about 500 servings of powdered coffee creamer. A consumer has no ability to determine if the representation on the label and website is true without buying the Product and having it tested by a laboratory. Reasonable consumers are entitled to rely on the truth of label statements about the number of servings a product provides.

54. Upon information and reasonable belief, Defendant could sell the Product without deceptive labeling by, for example, correctly stating the metric mass equivalent of the 1 teaspoon serving and adjusting the number of 1 teaspoon servings yielded by the Product according to the actual metric mass of each 1 teaspoon serving.

55. Target unlawfully marketed, advertised, sold, and distributed the Product.

56. The Product was a deceptively marketed and labeled product under New York law because the Product's labeling and advertising made false, deceptive, and materially misleading representations.

57. Target unlawfully and deceptively marketed, advertised, sold, and distributed the Product to New York purchasers, because the Product contained false and deceptive labeling which materially misled consumers.

58. Additionally, on information and reasonable belief, Target had actual knowledge of the false, deceptive and misleading label and continues to market, advertise, sell and distribute the Product.

59. Target sold the Product at a premium price per actual serving provided, and Target's false and misleading representations on the Product deceive New York consumers for the reasons previously alleged above.

DRAFT

60. Had Target not approved, authorized, and participated in the advertising, marketing, labeling, and sale of the Product containing the above-referenced deceptive representations, Plaintiff and the other Class members would not have been economically injured because Plaintiff and the other Class members would not have purchased the Product or would have paid less for the Product.

61. In addition, Plaintiff could not have determined whether the number of servings claimed on the Product's label was accurate other than to purchase the Product and apportion it in accordance with the stated serving size.

62. Plaintiff spent time, and incurred significant expense, having the Product tested by a third-party expert.

63. As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations, Defendant injured Plaintiff and the other Class Members in that Plaintiff and other Class Members:

a. paid a sum of money for the Product that was not as represented;

b. paid a premium price per serving of the Product as the number of servings were not provided as represented;

c. were deprived of the benefit of the bargain because the Product they purchased were different than what Defendant warranted;

d. were deprived the benefit of the bargain because the Product they purchased had less value than what was represented by Defendant;

e. did not receive Product that measured up to their expectations as created by Defendant;

f. purchased Product that was other than what was represented by Defendant;

DRAFT

g. received Product that Plaintiff and the other members of the Class did not expect or consent to; and

h. received Product that had different characteristics than what Defendant promised.

64. Accordingly, Plaintiff and the other Class Members have suffered injury in fact and lost money or property as a result of Defendant's wrongful conduct.

65. Plaintiff and the other Class Members did not obtain the full value of the advertised Product due to Defendant's misrepresentations.

66. Plaintiff and the other Class Members purchased, purchased more of, or paid more for the Product than they would have done had they known the truth about the Product.

67. The Product is worth significantly less than what Plaintiff and members of the Class paid for, and/or is not what Plaintiff and members of the Class reasonably intended to receive.

68. The Product was deceptively advertised and marketed for the reasons previously alleged herein.

69. With respect to the Product, Plaintiff and members of the Class paid a price premium or received less than they bargained for, because Plaintiff and members of the Class reasonably believed the Product contained the number of servings of powdered coffee creamer specified on the label and in the advertising, when in fact the Product did not contain anywhere near the promised number of servings.

70. Likewise, if Plaintiff and members of the Class had known that the Product did not contain the number of servings of powdered coffee creamer specified on the label and in the advertising, they would not have purchased the Product or would have paid less for the Product.

DRAFT

71. Plaintiff and the other Class Members would likely purchase the Product again if the deceptive advertising and labeling on the Product were corrected.

72. Because Defendant continues to advertise, market, and sell the deceptively labeled Product, there is a risk that Plaintiff and other Class Members could purchase the Product again, mistakenly believing the deceptive Product labeling and advertising had been corrected.

73. Plaintiff has no way of knowing if or when Target makes changes to the Product and whether the Product's labeling and advertising remains false and deceptive. For example, Target could change the contents of the Product and Plaintiff would have no way of knowing if the Product's representations about the number of servings it contains are deceptive other than to purchase the Product and evaluate how many servings are contained within.

74. Accordingly, Plaintiff and all other consumers purchasing the Product have been, are, and will continue to suffer a loss and be damaged by the deceptively, dishonestly, and misleadingly marketed, advertised and labeled Product and are being deprived of the benefit of the bargain they reasonably anticipated from the Product's labeling, marketing and advertising.

75. Plaintiff has performed all conditions precedent to bringing this Action.

DRAFT

**CLASS ALLEGATIONS**

76. Plaintiff brings this class action pursuant to all applicable provisions of Section 23 of the Federal Rules of Civil Procedure, on behalf of themselves and all members of the following Class:

> New York Class: During the fullest period allowed by law, all persons who purchased the Product within the State of New York for personal, family or household use and not resale.

77. Members of the Class described above are referred to herein as "Class Members" or members of the "Class."

78. Plaintiff reserves the right to amend the Class definition or add a Class or Classes if discovery and/or further investigation reveal that the Class definition(s) should be narrowed, expanded or otherwise modified.

79. Excluded from the Class are Defendant, its subsidiaries, affiliates, and employees; all persons who make a timely election to be excluded from the Class; governmental entities; and the Judge(s) to whom this case is assigned and any immediate family members thereof.

80. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of Plaintiff's claims on a class-wide basis using the same evidence as would be used to prove those claims in individual actions alleging the same claims.

**A. Numerosity – Federal Rules of Civil Procedure 23(a)(1)**

DRAFT

81. The members of the Class are so numerous that individual joinder of all class members is impracticable.

82. The precise number of members of the Class is unknown to Plaintiff, but it is clear that the number greatly exceeds the number that would make joinder practicable. Upon information and belief Plaintiff estimates the number of members in the Class to be in the tens-of-thousands, up to the hundreds-of-thousands, particularly given Defendant's comprehensive distribution and sales network throughout New York and the United States.

83. Members of the Class may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

84. The number of individuals who comprise the Class is so numerous that the disposition of all such person's claims in a class action, rather than in individual actions, will benefit both the parties and the courts.

**B. Commonality and Predominance – Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3)**

85. Common questions of law or fact exist as to all members of each Class and predominate over any questions affecting only individual members of the Class. All members of the Class were exposed to Defendant's deceptive and misleading advertising and marketing claims alleged herein.

86. Furthermore, common questions of law or fact include:

a. whether Defendant engaged in the conduct as alleged herein;

b. whether Defendant's practices violate applicable law cited herein;

c. whether Plaintiff and the other members of the Class are entitled to actual, statutory, or other forms of damages, and/or other monetary relief; and

d. whether Plaintiff and the other members of the Class are entitled to equitable relief, including but not limited to injunctive relief.

87. Defendant engaged in a common course of conduct in contravention of the laws Plaintiff seeks to enforce individually, and on behalf of the other members of the proposed Class. Materially identical business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action. Moreover, the common questions will yield common answers.

**C. Typicality – Federal Rules of Civil Procedure 23(a)(3)**

88. Plaintiff's claims are typical of the claims of the other members of the Class because, among other things, all members of the Class purchased, in a typical consumer setting, Defendant's Product, and were comparably injured through Defendant's same uniform misconduct described herein. Further, there are no defenses available to Defendant that are unique to Plaintiff or to any particular members of the Class.

DRAFT

**D. Adequacy of Representation – Federal Rules of Civil Procedure 23(a)(4)**

89. Plaintiff is an adequate representative of the members of the Class because Plaintiff's interests do not conflict with the interests of the other members of the Class that Plaintiff seeks to represent. Plaintiff has retained counsel competent and experienced in complex class action litigation and Plaintiff will prosecute this action vigorously. The Class's interests will be fairly and adequately protected by Plaintiff and Plaintiff's counsel. Plaintiff's counsel has represented consumers in a wide variety of actions where they have sought to protect consumers from fraudulent and deceptive practices.

**E. Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2)**

90. Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described herein, with respect to the members of the Class as a whole.

**F. Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1)**

91. Absent a representative class action, members of the Class would continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated purchasers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant. The proposed Class thus satisfies the requirements of Fed. R. Civ. P. 23(b)(1).

**G. Superiority - Federal Rule of Civil Procedure 23(b)(3)**

92. A class action is superior to any other available means for the fair and efficient

DRAFT

adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other members of the Class are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for members of the Class to individually seek redress for Defendant's wrongful conduct. Even if the members of the Class could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments; and increases the delay and expense to all parties and the court system and thereby unnecessarily clogging of dockets.

93. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Given the similar nature of the members of the Class's claims and the absence of material or dispositive differences in laws upon which the claims are based, the Class will be easily managed by the Court and the parties.

DRAFT

**FIRST CAUSE OF ACTION:**
**VIOLATION OF NEW YORK GEN.BUS.LAW § 349, *et seq.***

94. Plaintiff repeats, re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Class Action Complaint as if fully set forth herein verbatim.

95. The New York General Business Law Section 349 ("GBL §349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

96. To state a claim under GBL §§ 349 and 350, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct, that is (2) materially misleading, and

that (3) the plaintiff suffered injury as a result of the allegedly deceptive act or practice.[14]

97. Target is a mass merchandise retailer with total revenue of $109 billion in the U.S. during its 2022 fiscal year[15]. Target has approximately 2,000 retail stores nationwide, including 100 in New York,[16] and an eCommerce website at target.com.

98. Target manufactures, markets, promotes, advertises, and sells Market Pantry coffee creamers, including the Product at issue in this litigation.

99. Defendant's deceptive acts and practices were directed at, and impacted, consumers located in both New York and nationwide.

100. Defendant misleadingly, inaccurately, and deceptively advertises and markets its Product to consumers. Defendant's deceptive practices are likely to mislead— and have misled— reasonable consumers acting reasonably, such as Plaintiff and members of the Class.

101. Specifically, Defendant marketed, labeled and advertised the Product in a deceptive, false and materially misleading manner since the representations contained on the Product stated that the Product contains "about 500 servings" of powdered coffee creamer and that the serving size is "1 tsp (2g)" (and the representations on target.com stated that the Product contains "about 500 servings"). *See* Exhibit "C". Based on this prominent labeling and advertising, a reasonable consumer purchasing this Product would reasonably believe that the Product contained 500 servings. Despite this prominent labeling and advertising, the Product does not contain the number of servings promised because Defendant incorrectly stated the metric mass equivalent of the 1 teaspoon serving size and used such erroneous metric mass equivalent to determine the number of servings provided by the Product.

---

[14] *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2012); *see Goshen v. Mutual Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 n.1 (2002).
[15] https://corporate.target.com/getmedia/0817b557-7676-440b-a85d-3f48954ff919/2022-Target-Annual-Report.pdf
[16] Id.

DRAFT

102. Reasonable consumers rely on Defendant to honestly market and label the Product in a way that does not deceive reasonable consumers into believing they are purchasing Product that has 500 servings, when the truth is that the Product contains 16.6% fewer servings than the number of servings promised on the Product's label.

103. In addition, reasonable consumers would expect Defendant to honestly market and label the Product given that Target touts that it stands for "More for your money" as "It's our Expect More. Pay Less. brand promise." [17]

104. Defendant's improper consumer-oriented conduct —labeling and advertising the Product as providing about 500 servings per container— is misleading in a material way in that it, inter alia, induced Plaintiff and the Class Members to purchase and pay a premium for Defendant's Product and to use the Product when they otherwise would not have or would have paid less for.

105. Defendant has deceived reasonable consumers, like Plaintiff and the Class, into believing the Product was something it was not.

106. Plaintiff and the Class Members have been injured inasmuch as they paid a premium for a Product that could not —contrary to Defendant's representations— provide 500 servings per container. Accordingly, Plaintiff and the Class Members received less than what they bargained and/or paid for.

107. Since Plaintiff purchased the Product as a product advertising itself as containing about 500 servings of powdered coffee creamer, and it was not such a product, Plaintiff was damaged in proportion to the servings of powdered coffee creamer not received.

DRAFT

[17] https://corporate.target.com/about/purpose-history/our-commitments

108. Specifically, Plaintiff and other consumers of the Product, were cheated out of 16.6% of the servings they paid for based on the advertising, marketing, packaging and labeling of the Product.

109. Defendant's advertising and the Product's packaging and labeling (and, similarly, Defendant's website) induced Plaintiff and the Class Members to buy Defendant's Product and to pay a premium price.

110. Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and as a result Plaintiff and the Class Members have been damaged thereby.

111. GBL §349 gives the right to any person who has been injured by reason of any violation of GBL §349 to bring an action in his or her own name to enjoin such unlawful act or practice, an action to recover his or her actual damages or fifty dollars ($50.00), whichever is greater, or both such actions.

112. Additionally pursuant to GBL §349, the Court has discretion to increase the award of damages to an amount not to exceed three times the actual damages up to $1,000 if the Court finds the defendant willfully or knowingly violated GBL §349 and the discretion to award reasonable attorney's fees to a prevailing plaintiff.

113. On information and reasonable belief, Defendant had prior notice that the Product and advertising contained these untrue, false, and misleading statements regarding the number of servings provided by the Product. Defendant knew, or should have known, about the defect in the Product.

114. Despite being notified of the material misrepresentations described in this Class Action Complaint, Defendant made, and continues to make, these untrue, false and materially

DRAFT

misleading statements regarding the number of servings provided by the Product.

115. As a result of Defendant's recurring, unlawful deceptive acts and practices, Plaintiff and the Class Members are entitled to monetary, statutory, compensatory, and treble damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs. The damages suffered by the Plaintiff and the Class were directly and proximately caused by the deceptive and materially misleading practices of Defendant.

116. In addition, Plaintiff and Class Members seek equitable and injunctive relief against Defendant on terms that the Court considers reasonable, and reasonable attorneys' fees and costs.

117. Plaintiff and Class Members seek all available remedies, damages, and awards resulting from Defendant's violations of New York law.

DRAFT

**SECOND CAUSE OF ACTION:**
**VIOLATION OF NEW YORK GEN.BUS.LAW § 350, ET SEQ.**

118. Plaintiff repeats, re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Class Action Complaint as if fully set forth herein verbatim.

119. The New York General Business Law §350 ("GBL §350") provides, in part, as follows: "False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful."

120. New York General Business Law § 350a(1) provides, in part, that: "The term "false advertising" means advertising, including labeling, of a commodity, . . . if such advertising is misleading in a material respect." In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof. . . "See GBL §350a(1).

121. As stated above, to state a claim under GBL §§ 349 and 350, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct, that is (2) materially misleading, and that (3) the plaintiff suffered injury as a result of the allegedly deceptive act or practice.[18]

122. Target is a mass merchandise retailer in the U.S. with a total revenue of $109 billion during its 2022 fiscal year[19]. Target has approximately 2,000retail stores nationwide, including 100 in New York,[20] and an eCommerce website at target.com.

123. Target manufactures, markets, promotes, advertises, and sells the Market Pantry coffee creamers, including the Product at issue in this litigation.

124. Defendant's deceptive acts and practices were directed at, and impacted, consumers located in both New York and nationwide.

125. Defendant misleadingly, inaccurately, and deceptively advertises and markets its Product to consumers.

126. Defendant's deceptive practices are likely to mislead— and have misled— reasonable consumers acting reasonably, such as Plaintiff and members of the Class.

127. Defendant's labeling of the Product contains untrue and materially misleading statements concerning Defendant's Product. The representations contained on the Product stated that the Product contains "about 500 servings" of powdered coffee creamer and the serving size is "1 tsp (2g)". *See* Exhibit B. Based on this prominent labeling and advertising, a reasonable consumer purchasing the Product would reasonably believe that the Product contained 500 servings of powdered coffee creamer. Despite this prominent labeling and advertising, the

DRAFT

[18] *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2012); *see Goshen v. Mutual Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 n.1 (2002).
[19] https://corporate.target.com/getmedia/0817b557-7676-440b-a85d-3f48954ff919/2022-Target-Annual-Report.pdf
[20] Id.

Product does not contain the number of servings promised, because Defendant incorrectly stated the metric mass equivalent of the 1 teaspoon serving size and used such erroneous metric mass equivalent to determine the number of servings provided by the Product.

128. Defendant has engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of Section 350 of the New York General Business Law. The labeling and packaging of the Product are directed at consumers and are likely to – and have- materially mislead a reasonable consumer acting reasonably under the circumstances.

129. Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Product were, and continue to be, exposed to Defendant's material misrepresentations.

130. Plaintiff and the Class Members have been injured inasmuch as they reasonably relied upon the labeling, packaging, and advertising and paid a premium for the Product which was—contrary to Defendant's representations—unable to provide the number of servings stated on its label. Accordingly, Plaintiff and the Class Members received less than what they bargained and/or paid for.

131. Since Plaintiff purchased the Product as a product advertising itself as containing about 500 servings of powdered coffee creamer, and it was not such a product, Plaintiff was damaged in proportion to the servings of powdered coffee creamer not received.

132. Specifically, Plaintiff and other consumers of the Product, were cheated out of 16.6% of the servings they paid for based on the advertising, marketing, packaging and labeling of the Product.

DRAFT

133. Defendant's advertising, packaging, and Product's labeling induced Plaintiff and the Class Members to buy Defendant's Product.

134. New York General Business Law §350-e gives the right to any person who has been injured by reason of any violation of GBL §350 to bring an action in his or her own name to enjoin such unlawful act or practice, an action to recover his or her actual damages or $500, whichever is greater, or both such actions.

135. Additionally, pursuant to New York General Business Law §350-e the Court has discretion to increase the award of damages to an amount not to exceed three times the actual damages, up to $10,000, if the Court finds that the defendant willfully or knowingly violated GBL §350 and discretion to award reasonable attorney's fees to a prevailing plaintiff.

136. Despite being notified of the material misrepresentations described in this Class Action Complaint, Defendant made, and continues to make, these untrue, false and materially misleading statements regarding the number of servings provided by the Product.

137. As a result of Defendant's recurring, unlawful deceptive acts and practices, Plaintiff and Class Members are entitled to monetary, statutory, compensatory, and treble damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

138. In addition, Plaintiff and Class Members seek equitable and injunctive relief against Defendant on terms that the Court considers reasonable, and reasonable attorneys' fees and costs.

DRAFT

## THIRD CAUSE OF ACTION: BREACH OF EXPRESS WARRANTY

139. Plaintiff repeats, re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Class Action Complaint as if fully set forth herein verbatim.

140. Plaintiff and Class Members formed a contract with Defendant at the time Plaintiff and Class Members purchased the Product.

141. The terms of the contract include the promises and affirmations of fact made by Defendant on the Product's packaging and labels and through marketing and advertising, as described above, and were material to the Plaintiff and the Class Members' decisions to purchase the Product.

142. Defendant created express warranties through written descriptions on its Product that the Product contained "about 500 servings per container" and that the serving size for the Product is "1 tsp. (2g)".

143. Defendant made these representations to all consumers, which became the benefit of the bargain between Plaintiff, Class Members, and the Defendant and were material to the Plaintiff's and Class Members' decisions to purchase the Product.

144. Defendant breached the express warranties because, despite the above-referenced representations, based on expert testing the metric mass equivalent of a 1 teaspoon serving of the Product is not 2g as stated on the Product's nutrition facts panel but is in fact 2.4g.

145. Additionally, the Product's nutrition facts panel states that the contents of the Product provide about 500 servings when in fact the Product can only yield on average 417 servings because the Defendant incorrectly calculated the number of servings provided by the Product by using the erroneously stated metric mass equivalent of the stated serving side.

146. Defendant's failure to comply with Federal labeling regulations resulted in Defendant breaching the express warranties it provided on the Product's labeling by: (1) erroneously stating the metric mass equivalent of the stated serving size on the nutrition facts panel of the Product, and (2) incorrectly stating the number of servings provided by the Product

DRAFT

on the nutrition facts panel because it calculated the number of servings using the erroneously stated metric mass equivalent of the stated serving size.

147. Defendant knew, or should have known, about the defect in the Product.

148. As a direct and proximate result of Defendant's breach of express warranties concerning the number of servings of powdered coffee creamer contained in the Product, Plaintiff and members of the Class have suffered and will continue to suffer damages.

149. Plaintiff seeks all available remedies, damages, and awards resulting from Defendant's breaches of express warranties.

**FOURTH CAUSE OF ACTION:**
**UNJUST ENRICHMENT**
**(In the Alternative)**

DRAFT

150. Plaintiff repeats, re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Class Action Complaint as if fully set forth herein verbatim.

151. As a result of Defendant's wrongful and deceptive conduct alleged herein, Defendant knowingly and voluntarily accepted and retained wrongful benefits in the form of money paid by the Plaintiff and members of the Class when they purchased the Product.

152. In so doing, Defendant acted with conscious disregard for the rights of Plaintiff and members of the Class.

153. As a result of Defendant's wrongful conduct as alleged herein, Defendant has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and members of the Class.

154. Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

155. Under the common law doctrine of unjust enrichment, it is inequitable for Defendant to be permitted to retain the benefits it received, and is still receiving, without

justification, from the false and deceptive labeling and marketing of the Product to Plaintiff and members of the Class.

156. Defendant's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

157. The financial benefits derived by Defendant rightfully belong to Plaintiff and members of the Class.

158. Defendant should be compelled to disgorge in a common fund for the benefit of Plaintiff and members of the Class all wrongful or inequitable proceeds received by them.

DRAFT

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually, and on behalf of all others similarly situated members of the Class, prays for relief and judgement, including entry of an order, pursuant to each cause of action set forth in this Complaint as follows:

a. For an order certifying that this action may be maintained as a class action, certifying Plaintiff as representatives of the Class, and designating Plaintiff's attorneys as Class counsel;

b. Directing that Defendant bear the costs of any notice sent to the Class;

c. For actual damages in amounts to be determined by the Court and/or jury;

d. For statutory damages and/or punitive damages, as provided by the applicable statutes invoked above;

e. For an award of equitable relief for all causes of action that enjoins Defendant from continuing to engage, use, or employ any deceptive business acts or practices related to the design, testing, manufacture, assembly, development, marketing, advertising, or sale of the Product for the purpose of selling the

Product in such manner as set forth in detail above, or from making any claims found to violate New York law or the other causes of action as set forth above;

e. Restoring all monies that may have been acquired by Defendant as a result of such unfair and/or deceptive act or practices;

f. For an award of attorney's fees and costs;

g. For an award of pre- and post-judgment interest on any amounts awarded; and

h. For any other relief the Court might deem just, appropriate, or proper.

DRAFT

## DEMAND FOR JURY TRIAL

159. Plaintiff hereby demands trial by jury on all issues so triable.

Dated: ________________ Respectfully submitted,

**The Law Offices of Howard W. Rubinstein, P.A.**

By: ___________________________________

**ATTORNEY FOR PLAINTIFF**

DRAFT

**[EXHIBITS OMITTED FROM THIS DRAFT FOR BREVITY]**

DRAFT

# THE LAW OFFICES OF HOWARD W. RUBINSTEIN, P.A.

1281 North Ocean Drive, Singer Island, Florida 33404
625 East Main Street, Suite 102, Box 308, Aspen, Colorado 81611 (832) 715-2788 | howardr@pdq.net
305 Broadway, Suite 700, New York, New York 10007 (212) 500-3289


**CONFIDENTIAL SETTLEMENT COMMUNICATION PURSUANT TO § 408 OF THE FEDERAL RULES OF EVIDENCE AND ALL OTHER APPLICABLE PRIVILEGES**

February 13, 2024

Target Corporation *Via FedEx*
Attn: Legal Department
Attn: Don H. Liu – Executive Vice President and Chief Legal & Risk Officer
1000 Nicollet Mall
Minneapolis, Minnesota 55403

CT Corporation System *Via Fed Ex*
28 Liberty Street
New York, NY 10005

**RE:** **Notice of Violation of New York's Consumer Protection From Deceptive Acts and Practices Statute under Article 22-A of the New York General Business Law ("GBL") and Breach of Express Warranty**

**SUBJECT:** **False, Deceptive, and Misleading Labeling: Market Pantry Original Coffee Creamer (35.3 oz)**

Dear Mr. Liu,

We are sending this letter regarding the above-referenced product in conjunction with another letter describing claims against Target Corporation. The purpose of this letter is to place upon Target Corporation, and/or its subsidiaries or affiliates (collectively "Target"), a duty to preserve and maintain all of their records, including all documents, electronically stored information ("ESI"), data, and tangible things potentially relevant to the claims described in the referenced correspondence and Target's potential defenses to those claims. Such records include, but are not limited to:

1. All documents regarding the advertising and labeling of Market Pantry Original Coffee Creamer (35.3 oz) (hereafter the "Product"), including without limitation its nutrition facts panel and principal display panel as well as print and on-line advertising by Target or its agents;
2. All documents concerning any representations, claims, statements or disclosures made in relation to the Product and the servings;

3. Any complaints from any source concerning Target's labeling and/or advertising of the Product or complaints about marketing of the Product;
4. Any documents describing label, packaging, marketing or advertising changes that varied representations, claims or statements made regarding how servings were determined;
5. Any changes to the manufacture, sourcing, design, volume, or mass of the Product;
6. All documents regarding the volume of sales of the Product in the United States since at least January 1, 2019;
7. All documents regarding other claims or complaints made against Target regarding the number of servings claimed on the Product's label or packaging, on Defendant's website or in any marketing or advertising relating to the Product or otherwise contained in the Products; and
8. All internal communications and memoranda in any way related to the number of servings which can be made by the Product.

"Documents, data, and tangible things" should be interpreted expansively to encompass all materials potentially subject to discovery, including text, data, images, audio and video recordings (including message systems), and computer systems, code, files, and storage media. By way of example and not as an exhaustive list, these may include documents relevant to the allegations of the claim in the attached letter or Target's defenses thereto and that consist of or relate to, without limitation:

- documents relating to the aforementioned servings representations, claims, statements, advertising, or marketing, including internal documents, as well as agreements, communications, work-product, and other documents between, among, or relating to the Product and third-party supply-chain providers, manufacturers, quality control services providers, test laboratories, marketing agencies, distributors, and retailers;
- documents relating to drafting and evaluation of Product-related disclosures and claims, including all documents related to advertising, labeling, promotions, events data, merchandising allowances and other marketing activity;
- documents relating to plaintiff, Astoria Sassano ("Plaintiff"), proposed Class members, and communications with or relating to them or their representatives, including consumer complaints related to the Product;
- documents relating to sales of the Product, including but not limited to detailed price and sales data at a daily and/or weekly level and by channel as well as all scanner or scanner panel data;
- documents relating to sales of competitor products, including but not limited to any detailed price and sales data at a daily and/or weekly level and by channel as well as all scanner and scanner panel data; and

- documents relating in any way to Target's aforementioned serving representations, claims, statements, advertising, or marketing or similar labeling, or changes to labeling on consumer Product, including pricing of such Product and litigation relating to such Product.

"Preserve" should also be interpreted expansively to take reasonable measures to preserve potentially relevant evidence, as follows:

- Take immediate steps to locate and preserve evidence not already preserved. Target's duty is continuing and applies to evidence of which it later becomes aware, whether created before, during, or after the time periods specified in the attached claim letter.
- Preserve potential evidence, whether in the form of paper, tangible things, or ESI. Regarding ESI:
    - Preserve evidence that consists of or resides on and in systems, network devices, individual and shared computers, mobile devices, storage devices, cloud storage, stationary and portable media, and remote storage. Such evidence may exist on devices or media of business partners and service providers, and on employees' personal computers, portable and mobile devices (specifically including without limitation cell phones and all forms of data stored on cell phones, including without limitation, text messages), and portable media, such as USB drives, as well as social media and other online accounts.
    - Preserve evidence in its native form and format, including all versions and iterations, with intact and unaltered metadata and notations. (Note that even an action such as opening a file may cause the spoliation or loss of metadata, such as the date and by whom the file was last opened.)
    - Preserve both human and machine-readable evidence. Such evidence may include (by way of example and not as an exclusive list) e-mail, voicemail, instant messages, call logs, call center recordings, word-processing files, spreadsheets, databases, calendars, presentations, server logs, network activity logs, system backups, disaster recovery archives, and browser history and cache files on local devices, as well as related user instructions, manuals, diagrams, credentials, and decryption keys.
- Prevent spoliation and loss that may result from the modification, revision, reformatting, updating, overwriting, encryption, archiving, aging, corruption, deletion, wiping, shredding, or destroying of evidence.
    - Secure evidence.
    - Intervene to terminate or suspend activities that pose spoliation or loss risks, including where such risks result from automated system maintenance, routine document disposal, or individual actions such as encryption, drive defragmentation, file compression or, as mentioned above, opening a file and thereby altering metadata.
    - For devices and media at risk of spoliation or loss, create forensically sound images of ESI using properly documented processes, to preserve evidence that includes intact metadata as well as remnant or fragmentary data that may be recoverable through forensic examination.

- Identify and notify persons (including entities) anywhere in the world who possess, maintain custody of, or control such evidence as well as persons who control or effect resources or processes that could prevent its preservation or affect litigation discovery of it. Persons to be notified may include Target's employees, directors, agents, contractors, carriers, or bailees, or persons who are employees, agents, or contractors of business partners, affiliates, or third-party providers, including providers of information-technology-related goods, services, and resources.

On behalf of Plaintiff, and in furtherance of Target's preservation duty, we request that you promptly forward a copy of this letter to all third persons who may have possession, custody, or control of such evidence. We also request that you promptly forward a copy of this letter to all persons who may control or effect processes that could either impede or facilitate evidence preservation.

If you contend that any of the facts contained in this letter are inaccurate in any respect, please provide us with all of your facts, contentions, and supporting documents as quickly as possible, but in no event later than 30 days from the date of your receipt of this letter. We are available if you want to discuss the issues raised in this letter.

We appreciate your time and attention to this matter.

By: /s/ Howard W. Rubinstein
Howard W. Rubinstein, Esq.