FOLEY HOAG LLP

*1301 Avenue of the Americas*
*25th Floor*
*New York, NY 10019*

*212.812.0400 main*
*212.812.0399 fax*

*August T Horvath*
*212.812.0344 direct*
*ahorvath@foleyhoag.com*

July 2, 2026

**Via ECF**

Honorable Gary R. Brown
U.S. District Court for the Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722-4448

Re: *Sassano v. Target Corp., No. 2:26-cv-02448 (E.D.N.Y.)*

Dear Judge Brown:

As counsel for defendant Target Corporation ("Target"), we write pursuant to the Court's Rule II.g to request a pre-motion conference regarding Target's anticipated motion to dismiss Plaintiff's Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) or in the alternative, motion to transfer under 28 U.S.C. § 1404(a).

This putative class action concerns the Nutrition Facts Panel (NFP) of Target's Market Pantry Original Coffee Creamer, a powdered non-dairy creamer sold in a 35.3 oz (1 kg) container. The NFP states "about 500 servings per container" and "Serving size 1 tsp. (2g)." Plaintiff alleges that because her counsel's hired laboratories measured a teaspoon of samples of the powder at 2.3 or 2.4 grams rather than 2 grams, each container yields at least 13.31% fewer servings than represented. On that single premise, she asserts claims under New York General Business Law ("GBL") §§ 349 and 350 and for breach of express warranty. Target's motion will advance several independent grounds for dismissal, but two defects are independently dispositive: (1) Plaintiff failed to avail herself of the Product's unconditional satisfaction guarantee, and (2) she now fails to plead plausible facts in support of her allegation that the Product was out of specification at any time, and especially when it was manufactured and placed on Target's shelves.

## I. Plaintiff Lacks Standing Because the Product's Unconditional Satisfaction Guarantee Afforded a Complete Remedy

Plaintiff's sole alleged injury is that she "overpaid" for the Product because it purportedly contains fewer servings than labeled. But the Product's label bears an unambiguous promise: "100% satisfaction guaranteed or your money back." That promise is an unconditional offer of a full refund, extended by Target standing in the shoes of the manufacturer of its private-label brand, and it provides a complete remedy to any consumer dissatisfied with the Product

for any reason, including its quantity or quality. Plaintiff never alleges that she sought a refund under this guarantee or that she ever attempted to return the Product.

Critically, the satisfaction guarantee is not limited in time. Plaintiff attempts to plead around the guarantee by pointing to a different policy—Target's separate store return policy—which, she alleges, carries a 365-day limitation and a receipt requirement. (Compl. ¶¶ 55, 88.) This conflates two distinct promises. Unlike the store return policy, the 100% satisfaction guarantee printed on the Product label is not subject to any time limitation or proof-of-purchase requirement. The remedy was available to Plaintiff when she learned of her purported dissatisfaction, and it remains available to her today. Every reasonable consumer understands the difference between a manufacturer's satisfaction guarantee and a retail store's return policy, and there is no plausible argument that Plaintiff somehow confused these two things.

The law is clear that a plaintiff who fails to invoke such a remedy has suffered no injury-in-fact. Courts routinely dismiss consumer deception claims for lack of Article III standing where the product carries a money-back guarantee the plaintiff never attempted to exercise. *See Fields v. Walmart Inc.*, No. 8:23-cv-2057, 2024 U.S. Dist. LEXIS 92598, at *4 (M.D. Fla. Apr. 8, 2024); *Valiente v. Publix Super Mkts., Inc.*, No. 22-22930, 2023 U.S. Dist. LEXIS 91089, at *14 (S.D. Fla. May 24, 2023); *Perez v. Scotts Co. LLC*, No. 24-60516, 2024 U.S. Dist. LEXIS 207921, at *12 (S.D. Fla. Nov. 14, 2024). This District has recognized the same principle, observing that "the injury-in-fact analysis would change if the product had a money-back guarantee, … but defendant offered no such policy." *West v. Molson Coors Bev. Co. USA, LLC*, No. 23-cv-7547, 2024 U.S. Dist. LEXIS 140531, at *5 n.3 (E.D.N.Y. Aug. 6, 2024).

Plaintiff's only claimed harm was entirely remediable through the guarantee promising a refund of the full purchase price, which is about 7.5 times her alleged injury. A plaintiff cannot manufacture Article III standing by ignoring an available remedy, explicitly offered on the same label just inches away from the representation complained of, and then claim injury. The Complaint should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction.

.

## II. Plaintiff Fails to Plausibly Allege the Product Was Not Correctly Labeled

The Complaint contains no plausible allegation that the Product did not conform to its label, either at the time it left the manufacturing facility or when placed on Target's shelves. This omission is independently dispositive because a consumer-deception claim requires that the challenged representation be misleading when made. *See* 21 C.F.R. § 101.9(b)(9); FDA, *Guidance for Industry: Guidelines for Determining Metric Equivalents of Household Measures* (Oct. 1993) (weight and volume should be measured prior to shipping or excessive handling; "moisture gains or losses should be minimized"). If the Product conformed to its label at the time of production and labeling, Target made no actionable misrepresentation, notwithstanding that individual units of the Product may vary in density months later. The Complaint also is preempted, because it is entirely premised on an alleged violation of FDA regulations, and there is no plausible allegation of such a violation.

Like any dry powdered food, the Product is expressly sold by weight, not by volume, and servings are calculated by weight as well. The density and volume of such products vary over time and under specific conditions. They are well known to be subject to settling, moisture absorption, aeration, and compaction that alter their density over time, including the time after the Product leaves the plant, so that the same mass can weigh more per unit of volume. The FDA mandates a volume equivalent serving size on the NFP—the only place any volume statement appears on the Product—which must necessarily be approximate. Plaintiff pleads no plausible facts in support of her allegation that the Product does not weigh between 1.75 and 2.24 grams per teaspoon at the time when it is manufactured and labeled, making it accurately labeled under FDA volume declaration rules.

Plaintiff's laboratory tests, to the extent they are accepted as valid for purposes of this motion, show that the Product eventually varies in density, and therefore in volume per 2g serving, after some time post-manufacture. The weights measured in Plaintiff's two tests are statistically inconsistent and contradictory. They also show nothing about the Product's density and volume at the time of manufacture, at the time it is first placed on Target's shelves, or at the time that any consumer purchased any other container. Any reasonable consumer expects that the Product is routinely tested when manufactured and labeled, but that its characteristics may change after weeks or months in distribution, on retail shelves, and in storage. This is, of course, true, but even if it is only a possibility, under *Twombly* and *Iqbal*, where a lawful "obvious alternative explanation" exists for the facts alleged, the complaint does not plausibly state a claim. This failure to allege plausibly that the Product was mislabeled at the time of manufacture or sale is independently fatal to all of Plaintiff's claims.

**III. The Complaint Suffers from Additional, Independent Defects**

*First*, no reasonable consumer would be misled. Read as a whole, the label is accurate and self-verifying: the front discloses the net weight (1 kg), and the NFP defines a serving as 2 grams, so that 1,000g ÷ 2g = 500 servings. The qualifying "(2g)" appears on the same line and in the same typeface as the servings statement, and the word "about" signals an approximation, particularly for a powder sold by weight. *See Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018); *Telesco v. Starbucks Corp.*, 682 F. Supp. 3d 397, 405 (S.D.N.Y. 2023); *Davis v. Hain Celestial Grp., Inc.*, 297 F. Supp. 3d 327, 334 (E.D.N.Y. 2018). Contrary to Plaintiff's erroneous regulatory theory, "about 500 servings" is not read under FDA rounding conventions (21 C.F.R. § 101.9(b)(8)(i)) as "give or take half a serving" for products having greater than five servings. Moreover, FDA regulations are not probative of how a reasonable consumer understands a label. *See Valencia v. Snapple Bev. Corp.*, No. 23-CV-1399 (CS), 2024 U.S. Dist. LEXIS 48493, at *8 (S.D.N.Y. Mar. 18, 2024); *Henry v. Campbell Soup Co.*, 22-cv-431, 2023 U.S. Dist. LEXIS 56915, at *21 (E.D.N.Y. Mar. 31, 2023). It is implausible that reasonable consumers read "about 500 servings" to mean "499.5 to 500.5 servings."

*Second*, Plaintiff's laboratory testing is methodologically deficient and irrelevant. The reports attached to the Complaint contain inadequate methodological detail, rely on 5 mL laboratory measuring spoons rather than household teaspoons, and do not replicate the conditions of consumer use. Their contradictory results also suggest that one or both tests are unreliable and invalid. They do not provide support for the Complaint allegations. *See Santiful v. Wegmans Food Mkts., Inc.*, No. 20-cv-2933, 2023 U.S. Dist. LEXIS 40920, at *11 (S.D.N.Y. Mar. 10, 2023); *Hawkins v. Coca-Cola Co.*, 654 F. Supp. 3d 290, 306 (S.D.N.Y. 2023).

*Third*, the GBL claims fail for lack of a cognizable injury and causation. A full-refund theory is not a viable measure of damages, and Plaintiff's conclusory "price premium" allegations do not connect any premium to the challenged statement; nor does she plausibly plead that she saw and relied on the statement before purchase. *See Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 56 (1999); *Dash v. Seagate Tech. (U.S.) Holdings, Inc.*, 27 F. Supp. 3d 357, 361 (E.D.N.Y. 2014); *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 350 (S.D.N.Y. 2020); *Gordon v. Target Corp.*, 20-cv-9589, 2022 U.S. Dist. LEXIS 48769, at *39 (S.D.N.Y. Mar. 18, 2022).

Plaintiff's breach of express warranty claim fails for the same reasons as the deception claims and for the independent want of any plausible breach. *See Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 806 (S.D.N.Y. 2021); *Avola v. Louisiana-Pac. Corp.*, 991 F. Supp. 2d 381, 391-92 n.9 (E.D.N.Y. 2013). Finally, Plaintiff lacks standing to seek injunctive relief because she fails to allege any likelihood of continuing or future injury.

## IV. This Case Should be Transferred to the District of Minnesota

Target will move to transfer this case to the District of Minnesota under 28 U.S.C. § 1404(a), where it should have been brought for the convenience of parties and witnesses. The convenience of witnesses is generally considered the most important factor in a forum analysis, and the location of relevant documents is also pertinent. *See In re Target Corp. S'holder Class Action Litig.*, No. 2:25-cv-00135, 2025 LEXIS 591463, at *3 (M.D. Fla. Nov. 14, 2025). Here, the expected witnesses and relevant documents are in Minneapolis.

Target respectfully requests that the Court schedule a pre-motion conference, set a briefing schedule, and ultimately grant Target's motion to dismiss, or in the alternative, to transfer.

Respectfully submitted,

August T. Horvath
Foley Hoag LLP
*Attorneys for Defendant Target Corp.*